**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------x

BNP PARIBAS MORTGAGE
CORPORATION and BNP PARIBAS,

|                                              |                                    |
|----------------------------------------------|------------------------------------|
|                        Plaintiffs,           |                                    |
|                                              | Civ. Act. No. 09-CV-9783-RWS       |
|            -against-                         |                                    |
| BANK OF AMERICA, N.A.,                       |                                    |
|                        Defendant.            |                                    |

--------------------------------------------------------------------x
--------------------------------------------------------------------x

DEUTSCHE BANK AG,

|                                              |                                    |
|----------------------------------------------|------------------------------------|
|                        Plaintiff,            |                                    |
|                                              | Civ. Act. No. 09-CV-9784-RWS       |
|            -against-                         |                                    |
| BANK OF AMERICA, N.A.,                       |                                    |
|                        Defendant.            |                                    |

--------------------------------------------------------------------x

### MEMORANDUM OF LAW IN SUPPORT OF
### BANK OF AMERICA'S MOTION TO DISMISS CERTAIN CLAIMS IN
### PLAINTIFFS' SECOND AMENDED COMPLAINTS

MUNGER, TOLLES & OLSON LLP
Marc T.G. Dworsky
Kristin Linsley Myles
Richard St. John
355 South Grand Avenue, Thirty-Fifth Floor
Los Angeles, California 90071-1560
(213) 683-9100

*Attorneys for Defendant Bank of America, N.A.*

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................ 1
II.   RELEVANT PROCEDURAL BACKGROUND .................................................... 2
III.  ARGUMENT .............................................................................................................. 3
    A.  Plaintiffs' Claims That BoA Failed to "Sue Itself" Have No Basis in Law ...................... 3
        1.  The Law Does Not Permit BoA to Bring Adversarial Claims Against Itself ................ 4
        2.  The Facility Documents Do Not Require BoA to Sue Itself ................................. 8
        3.  BoA Could Not Have Assigned an Invalid Claim Against Itself ........................... 10
        4.  Certain "Sue Itself" Claims Should Be Dismissed as Duplicative .......................... 11
    B.  Plaintiffs' Tort Claims Improperly Convert Contract Duties into Tort Duties ................ 12
        1.  Plaintiffs Do Not State a Claim for Negligence .......................................... 12
        2.  Plaintiffs Do Not State a Claim for Negligent Misrepresentation. ........................ 17
    C.  Plaintiffs' Contingent Quasi-Contract Claims Fail to State a Claim ......................... 24
        1.  BoA Was Not Unjustly Enriched at Plaintiffs' Expense .................................. 25
        2.  Plaintiffs Are Not Entitled to the Remedy of a Constructive Trust ....................... 27
        3.  Plaintiffs' Promissory Estoppel Claims Fail Because They Do Not Cite Any
            Actionable Promise ..................................................................... 29
        4.  Plaintiffs Do Not State a Claim for Negligent Performance of an Assumed Duty ........ 32
IV.   CONCLUSION ......................................................................................................... 34

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*101 McMurray, LLC v. Porter*,
 No. 10 Civ. 9037 (CS), 2012 WL 997001 (S.D.N.Y. Mar. 26, 2012) ...................................28

*Arcadian Phosphates, Inc. v. Arcadian Corp.*,
 884 F.2d 69 (2d Cir. 1989) ...........................................................................................................31

*B.E.L.T., Inc. v. Wachovia Corp.*,
 403 F.3d 474 (7th Cir. 2005) .......................................................................................................26

*Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*,
 No. 03 Civ. 1537, 2003 WL 23018888 (S.D.N.Y. Dec. 22, 2003) ................................16, 17

*BNP Paribas Mortg. Corp. v. Bank of America, N.A.*,
 778 F. Supp. 2d 375 (S.D.N.Y. 2011) ............................................................................. passim

*BNP Paribas Mortg. Corp. v. Bank of America, N.A.*,
 866 F. Supp. 2d 257 (S.D.N.Y. 2012) ............................................................................. passim

*BNP Paribas Mortg. Corp. v. Bank of America, N.A.*,
 Nos. 10 Civ. 8630, 8299 (RWS), 2011 WL 3847376 (S.D.N.Y. Aug. 30, 2011) ............11, 13

*Boller v. Nat'l Mediation Bd.*,
 647 F. Supp. 1060 (S.D. Tex. 1986) .............................................................................................5

*Capital Distributions Servs., Ltd. v. Ducor Exp. Airlines, Inc.*,
 440 F. Supp. 2d 195 (E.D.N.Y. 2006) .......................................................................................28

*Cherny v. Emigrant Bank*,
 604 F. Supp. 2d 605 (S.D.N.Y. 2009) ........................................................................................19

*Cleveland v. Chamberlain*,
 66 U.S. 419 (1861) ..........................................................................................................................5

*Comerica v. Suburban Trust & Sav. Bank*,
 No. 95-1551, 1996 WL 585888 (6th Cir. Oct. 10, 1996) .........................................................26

*County of Suffolk v. Long Island Lighting Co.*,
 728 F.2d 52 (2d Cir. 1984) ...................................................................................................14, 20

*Cruden v. Bank of New York*,
 957 F.2d 961 (2d Cir. 1992) ..................................................................................................6, 7, 9

*Deutsche Bank Secs., Inc. v. Rhodes*,
    578 F. Supp. 2d 652 (S.D.N.Y. 2008)..................................................................14

*Diesel Props S.R.L. v. Greystone Bus. Credit II LLC*,
    631 F.3d 42 (2d Cir. 2011)..................................................................26

*Eaves v. Designs for Fin., Inc.*,
    785 F. Supp. 2d 229 (S.D.N.Y. 2011)..................................................................18

*EED Holdings v. Palmer Johnson Acquisition Corp.*,
    387 F. Supp. 2d 265 (S.D.N.Y. 2004)..................................................................21

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
    837 F. Supp. 2d 162 (S.D.N.Y. 2011)..................................................................6, 9

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*,
    343 F.3d 189 (2d Cir. 2003)..................................................................23, 30

*ESI, Inc. v. Coastal Power Prod., Co.*,
    995 F. Supp. 419 (S.D.N.Y. 1998)..................................................................12

*Evmar Oil Corp. v. Getty Oil Co.*,
    No. 76-4039, 1978 WL 1067 (C.D. Cal. Mar. 17, 1978)..................................................................5

*Faulkner v. Arista Records LLC*,
    602 F. Supp. 2d 470 (S.D.N.Y. 2009)..................................................................28

*Giordano v. Thomson*,
    564 F.3d 163 (2d Cir. 2009)..................................................................25

*Globe & Rutgers Fire Ins. Co. v. Hines*,
    273 F. 774 (2d Cir. 1921) ..................................................................5, 7

*Hargrave v. Oki Nursery, Inc.*,
    636 F.2d 897 (2d Cir. 1980)..................................................................13, 14

*Hayton Farms, Inc. v. Pro-Fac Co-op., Inc.*,
    No. C10-520-RSM, 2011 WL 2898651 (W.D. Wash. July 18, 2011)..................................................................6

*Henneberry v. Sumitomo Corp.*,
    No. 04 Civ. 2128 (PKL), 2005 WL 991772 (S.D.N.Y. Apr. 27, 2005)..................................................................30, 32

*Hydro Investors, Inc. v. Trafalgar Power Inc.*,
    227 F.3d 8 (2d Cir. 2000) ..................................................................18, 21, 23

*In re Enron Corp.*,
    No. 01 B 16034 (AJG), 2003 WL 1571719 (Bankr. S.D.N.Y. Mar. 27, 2003)..................................................................28

*In re First Cent. Fin. Corp.,*
    377 F.3d 209 (2d Cir. 2004) ............................................................................27

*In re Gulf Oil/Cities Service Tender Offer Litig.,*
    725 F. Supp. 712 (S.D.N.Y. 1989) ...................................................................31

*In re K-Dur Antitrust Litig.,*
    338 F. Supp. 2d 517 (D.N.J. 2004) ..................................................................27

*Ixe Banco, S.A. v. MBNA Am. Bank, N.A.,*
    No. 07 Civ. 432 (LAP), 2008 WL 650403 (S.D.N.Y. Mar. 7, 2008) ...................21

*JM Vidal, Inc. v. Texdis USA, Inc.,*
    764 F. Supp. 2d 599 (S.D.N.Y. 2011) ..............................................................23

*JPMorgan Chase Bank v. Winnick,*
    350 F. Supp. 2d 393 (S.D.N.Y. 2004) ...................................................... passim

*King County v. IKB Deutsche Industriebank AG,*
    863 F. Supp. 2d 288 (S.D.N.Y. 2012) ..............................................................20

*Labajo v. Best Buy Stores, L.P.,*
    478 F. Supp. 2d 523 (S.D.N.Y. 2007) ..............................................................14

*LaSalle Bank, N.A. v. Citicorp Real Estate Inc.,*
    No. 02 Civ. 7868 (HB), 2003 WL 1461483 (S.D.N.Y. Mar. 21, 2003) ...........19, 23

*Law Debenture Trust Co. v. Maverick Tube Corp.,*
    595 F.3d 458 (2d Cir. 2010) ...............................................................................9

*Madison Capital Co., LLC v. Alasia, LLC,*
    615 F. Supp. 2d 233 (S.D.N.Y. 2009) ..............................................................20

*Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.,*
    244 F.R.D. 204 (S.D.N.Y. 2007) ......................................................................14

*Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary
    Dance, Inc.,*
    380 F.3d 624 (2d Cir. 2004) .............................................................................27

*Med. Research Assocs., P.C. v. Medcon Fin. Servs., Inc.,*
    253 F. Supp. 2d 643 (S.D.N.Y. 2003) ..............................................................32

*Merex A.G. v. Fairchild Weston Sys., Inc.,*
    29 F.3d 821 (2d Cir. 1994) ...............................................................................29

*Nationwide Auction Co. v. Lynn,*
    No. 90 Civ. 7643, 1996 WL 148489 (S.D.N.Y. Apr. 1, 1996) ...........................10

*Peak Partners, LP v. Republic Bank,*
  191 F. App'x 118 (3d Cir. 2006) ....................................................................7

*Phoenix Ins. Co. v. Erie & W. Transp. Co.,*
  117 U.S. 312 (1886)........................................................................................6

*Pons v. People's Republic of China,*
  666 F. Supp. 2d 406 (S.D.N.Y. 2009)...........................................................28

*Princeton Univ. v. Schmid,*
  455 U.S. 100 (1982)........................................................................................4

*Richardson v. Ramirez,*
  418 U.S. 24 (1974)..........................................................................................4

*Ringier Am., Inc. v. Land O'Lakes, Inc.,*
  106 F.3d 825 (8th Cir. 1997) ........................................................................26

*RJ Capital, S.A. v. Lexington Capital Funding III, Ltd.,*
  No. 10 Civ. 25 (PGG), 2011 WL 3251554 (S.D.N.Y. July 28, 2011).......................7

*RLI Ins. Co. v. King Sha Group,*
  598 F. Supp. 2d 438 (S.D.N.Y. 2009)..........................................................13, 16, 32

*Robehr Films, Inc. v. Am. Airlines, Inc.,*
  No. 85 Civ. 1072 (RPP), 1989 WL 111079 (S.D.N.Y. Sept. 19, 1989) .................14

*South Spring Hill Gold-Min. Co. v. Amador Medean Gold-Min. Co.,*
  145 U.S. 300 (1892)........................................................................................5

*Sprint Commc'ns Co. v. APCC Servs., Inc.,*
  554 U.S. 269 (2008)........................................................................................5

*Tassinare v. Am. Nat'l Ins. Co.,*
  32 F.3d 220 (6th Cir. 1994) ...........................................................................6

*Teachers Ins. & Annuity Ass'n v. CRIIMI MAE Servs. Ltd.,*
  681 F. Supp. 2d 501 (S.D.N.Y. 2010)............................................................7

*Travelers Cas. & Sur. Co. v. Dormitory Auth.,*
  734 F. Supp. 2d 368 (S.D.N.Y. 2010)...........................................................20

*U.S. West Fin. Servs., Inc. v. Tollman,*
  786 F. Supp. 333 (S.D.N.Y. 1992).................................................................31

*United States v. Goforth,*
  465 F.3d 730 (6th Cir. 2006) ........................................................................26

*United States v. Johnson,*
   319 U.S. 302 (1943)....................................................................................................5

*Wechsler v. Hunt Health Sys., Ltd.,*
   330 F. Supp. 2d 383 (S.D.N.Y. 2004)........................................................................12

**STATE CASES**

*Barrett v. Freifeld,*
   883 N.Y.S.2d 305 (2d Dep't 2010)............................................................................27

*Bederman v. Moskowitz,*
   139 N.Y.S.2d 352 (Sup. Ct. 1955).............................................................................7

*Bokat v. Getty Oil Co.,*
   262 A.2d 246 (Del. 1970)............................................................................................5

*CCG Assocs. I v. Riverside Assocs.,*
   556 N.Y.S.2d 859 (1st Dep't 1990)............................................................................9

*Chimart Assocs. v. Paul,*
   66 N.Y.2d 570 (1986)................................................................................................10

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.,*
   70 N.Y.2d 382 (1987)..............................................................................13, 16, 20, 32

*Digital Broad. Corp. v. Ladenburg, Thalmann & Co., Inc.,*
   883 N.Y.S.2d 186 (2009).....................................................................................16, 17

*Eaves Brooks Costume Co. v. Y.B.H. Realty Corp.,*
   76 N.Y.2d 220 (1990)................................................................................................33

*Espinal v. Melville Snow Contractors, Inc.,*
   98 N.Y.2d 136 (2002)..........................................................................................32, 33

*Hamilton v. Hertz Corp.,*
   498 N.Y.S.2d 706 (1986)..........................................................................................16

*HSH Nordbank AG v. UBS AG,*
   941 N.Y.S.2d 59 (1st Dep't 2012).............................................................................22

*Hyman v. N.Y. Stock Exchange, Inc.,*
   848 N.Y.S.2d 51 (1st Dep't 2007)...............................................................................6

*In re Lipper Holdings, LLC,*
   766 N.Y.S.2d 561 (1st Dep't 2003).............................................................................9

*JPMorgan Chase Bank, N.A. v. Controladora Comerical Mexicana S.A.B. de C.V.,*
   No. 603215/08, 2010 WL 4868142 (N.Y. Sup. Ct. Mar. 16, 2010) .........................24

*Kaehler-Hendrix v. Johnson Controls, Inc.*,
  871 N.Y.S.2d 359 (2d Dep't 2009) ................................................................32

*Kimmel v. Schaefer*,
  89 N.Y.2d 257 (1996) ....................................................................................21

*MBIA Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  916 N.Y.S.2d 54 (1st Dep't 2011) .................................................................24

*McMahan & Co. v. Bass*,
  673 N.Y.S.2d 19 (1st Dep't 1998) .................................................................19

*Parrott v. Coopers & Lybrand, L.L.P.*,
  95 N.Y.2d 479 (2000) ....................................................................................20

*Penn. Gen. Ins. Co. v. Austin Power Co.*,
  68 N.Y.2d 465 (1986) ..................................................................................5, 6

*Redevelopment Agency v. City of Berkeley*,
  80 Cal. App. 3d 158 (1978) .............................................................................7

*Roberts v. Champion Int'l Inc.*,
  382 N.Y.S.2d 790 (1st Dep't 1976) ...............................................................14

*Rosenzweig v. N.Y. State Surrogate's Court*,
  255 N.Y.S.2d 618 (Sup. Ct. 1965) ..................................................................4

*Schwartz v. Miltz*,
  909 N.Y.S.2d 729 (2d Dep't 2010) ................................................................29

*Shirai v. Blum*,
  239 N.Y. 172 (1924) ......................................................................................11

*Simonds v. Simonds*,
  45 N.Y.2d 233 (1978) ....................................................................................27

*Squire v. Greene*,
  52 N.Y.S. 1013 (2d Dep't 1898) ....................................................................10

*Symbol Techs., Inc. v. Deloitte & Touche, LLP*,
  888 N.Y.S.2d 538 (2d Dep't 2009) ..........................................................11, 12

*Trs. of the First Society of the Methodist Episcopal Church v. Stewart*,
  27 Barb. 553 (N.Y. Sup. Ct. 1858) .......................................................... passim

*Trump Village Section 3, Inc. v. New York State Housing Fin. Agency*,
  292 A.D.2d 156, 739 N.Y.S.2d 37 (2002) ................................................16, 17

*West Penn Admin., Inc. v. Pittsburgh Nat'l Bank,*
    433 A.2d 896 (Pa. Super. 1981)...................................................................10, 11

**FEDERAL RULES**

Fed. R. Civ. P. 9(b) ...................................................................................................18

Fed. R. Civ. P. 11(b)(3)............................................................................................25

**TREATISES**

59 Am. Jur. 2d Parties § 3 ..........................................................................................7

106 N.Y. Jur. 2d Trusts § 169....................................................................................28

W. Keeton *et al.*, PROSSER & KEETON ON TORTS (5th ed. 1984) § 92.........................12

Restatement (Second) Torts § 324A ...........................................................................33

**OTHER AUTHORITIES**

"Coke Sues," *available at* http://www.youtube.com/watch?v=YS7qO8O5jLs ............................5

# I.  INTRODUCTION

Only three causes of action—out of nine alleged by BNP Paribas Mortgage Corporation ("BNP") and 11 alleged by Deutsche Bank AG ("DB")—survived Bank of America, N.A.'s ("BoA") last motion to dismiss.  Plaintiffs now have added over ten new claims to their Second Amended Complaints ("SACs") in an effort to work around the adverse rulings that have winnowed this case.

This motion addresses three sets of these new claims.  *First*, in response to this Court's ruling that Plaintiffs lack standing to sue for alleged breaches of the Custodial and Depositary Agreements, Plaintiffs now allege that BoA breached the Security Agreement and Base Indenture by not *suing itself* for the same alleged breaches of the agreements.  This bizarre and unprecedented theory—an attempt to smuggle into contracts they *can* enforce new claims under contracts they *cannot* enforce—not only finds no support in the contracts themselves, but is barred by well-settled law holding that a party, except in narrow circumstances not present here, may not bring suit against itself.

*Second*, Plaintiffs offer new general negligence and negligent misrepresentation claims based upon alleged breaches of contractual duties—including duties imposed by the two contracts that Plaintiffs lack standing to enforce.  This Court already has held in this case that New York law does not allow a plaintiff to transform alleged breaches of contract into tort claims or to recover in tort for economic loss arising from contractual duties.  Particularly where, as here, Plaintiffs are sophisticated, commercial entities, they are confined to the contract rights for which they bargained.

*Third*, Plaintiffs allege an assortment of contingent quasi-contract claims, to be pursued only if—due to the massive criminal fraud perpetrated through Ocala Funding, LLC by Taylor, Bean & Whitaker Mortgage Corp. ("TBW"), the other parties to the operative contracts—those contracts prove unenforceable.  These new claims fail for many of the same reasons as Plaintiffs' other new claims, among them Plaintiffs' failure to allege that they were owed any extra-

contractual duty of care or that BoA was enriched at their expense.

Plaintiffs' Fourth through Twelfth Causes of Action, and BNP's Fourteenth Cause of Action, should be dismissed with prejudice and the cycle of repleading new theories should end.[1]

## II.  RELEVANT PROCEDURAL BACKGROUND

In these actions, Plaintiffs seek to recover from BoA their investments in Ocala, which was a wholly-owned subsidiary of TBW.  As the Court is aware, TBW and Ocala were engaged in a multi-faceted fraudulent scheme that was exposed in 2009 by the implosion of the real estate "bubble."  BoA performed limited functions for Ocala and knew nothing of the fraud, but it has been the target of Plaintiffs' claims because it is the only non-government entity left standing.

On March 23, 2011, the Court granted in part and denied in part BoA's motion to dismiss Plaintiffs' First Amended Complaints.  *See BNP Paribas Mortg. Corp. v. Bank of America, N.A.*, 778 F. Supp. 2d 375 (S.D.N.Y. 2011) ("March 2011 Order").  The Court held, among other things, that Plaintiffs lacked standing to enforce two contracts against BoA—the Custodial and Depositary Agreements (*see* Decl. of Richard St. John, dated Jan. 15, 2013, Exs. A & B)— because Plaintiffs were neither parties to, nor intended third-party beneficiaries of, those agreements.  March 2011 Order, 778 F. Supp. 2d at 408.  The Court also held that, although Plaintiffs *were* intended third-party beneficiaries of two other contracts—the Security Agreement and Base Indenture (*see* St. John Decl., Exs. C & D)—they lacked standing to sue for any breach of those contracts before July 20, 2009, when they purchased the Ocala notes upon which they now base their claimed injuries, *id.* at 420.[2]

In their current pleading, Plaintiffs have tried to circumvent the March 2011 Order by

---

[1] BoA does not address at this time Plaintiffs' renewed claims that BoA converted certain mortgage loans allegedly owned by Ocala Funding, LLC ("Ocala"), the now-defunct facility in which Plaintiffs invested.  These are Plaintiffs' respective Thirteenth Causes of Action.  The Court previously dismissed these same conversion claims for lack of standing, and Plaintiffs bring them now as assignees of Ocala.  Although BoA believes these claims will prove meritless once discovery is complete, BoA is not addressing them in the present motion due to a concern the Court expressed in its prior opinion about potential factual issues.

[2] These four contracts are referred to herein collectively as the "Facility Documents."

recasting their dismissed claims under the Custodial and Depositary Agreements as breaches of the Security Agreement and the Base Indenture.  To lend weight to that implausible theory, Plaintiffs served identical letters upon BoA in July 2011 asserting that BoA was required by the Security Agreement and the Base Indenture to sue itself for alleged breaches of the Custodial and Depositary Agreements, and demanding that BoA commence such suit or assign such claims to Plaintiffs.  *See* St. John Decl., Exs. E & F; DB SAC ¶ 278 ("DB and BNPP instructed BOA to sue itself").  BoA declined those demands.

On August 30, 2011, the Court granted BoA's motion to dismiss separate complaints that Plaintiffs had filed in federal court in Florida.  In those actions, which were transferred to this Court, Plaintiffs alleged that BoA had converted loans allegedly owned by Ocala.  The Court dismissed the actions for lack of standing but granted Plaintiffs leave to replead.  *See BNP Paribas Mortg. Corp. v. Bank of America, N.A.*, Nos. 10 Civ. 8630, 8299 (RWS), 2011 WL 3847376 (S.D.N.Y. Aug. 30, 2011) ("August 2011 Order").  The Court then granted Plaintiffs leave to file Second Amended Complaints in the main action, and dismissed a third-party complaint filed by BoA against affiliates of Plaintiffs that acted as Note Dealers with respect to the Ocala notes.  *See BNP Paribas Mortg. Corp. v. Bank of America, N.A.*, 866 F. Supp. 2d 257 (S.D.N.Y. 2012) ("June 2012 Order").

Plaintiffs filed their SACs on October 1, 2012.  Although this litigation has been pending for over three years and the April 19, 2013 fact discovery deadline is fast approaching, the SACs plead an array of new claims.  For the reasons explained below, certain of those new claims fail to state a claim on their face and should be dismissed with prejudice.

## III.  ARGUMENT

### A.    Plaintiffs' Claims That BoA Failed to "Sue Itself" Have No Basis in Law

Plaintiffs' claims based upon BoA's failure either to "sue itself" or to assign claims against itself—their Fourth, Fifth, and Sixth Causes of Action—are legally flawed and should be dismissed.

Plaintiffs' core theory for these claims is that BoA had contractual duties as Collateral Agent (under the Security Agreement) and as Indenture Trustee (under the Indenture) to sue itself in its other capacities for alleged breaches of the Custodial and Depositary Agreements, respectively, *see* BNP SAC ¶¶ 217-26; DB SAC ¶¶ 275, 288, 294 (alleged breaches of the Security Agreement) and BNP SAC ¶¶ 227-37; DB SAC ¶¶ 296-316 (alleged breaches of the Indenture, including alleged breach of fiduciary duty), and that it breached those duties by failing to bring suit against itself for these alleged claims.  Plaintiffs also allege that BoA had a duty under the Security Agreement to sue itself for conversion and a duty under the Indenture to sue itself for breaches of the Security Agreement (a claim that appears to duplicate Plaintiffs' First Cause of Action, which asserts a direct claim under the Security Agreement).

These "sue yourself" theories of contract and tort liability are unprecedented and legally meritless, as Plaintiffs themselves have acknowledged when it served their interest to do so.  In seeking standing to enforce the Custodial and Depositary Agreements, BNP conceded—indeed argued—that, "[f]or obvious reasons," BoA would not sue itself for its own alleged breaches of those contracts (BNP Opp. to MTD at 31), and DB argued that the principle of *cestuis que trustent* allows a beneficiary to "step into the shoes of its trustee" because "the trustee is incapable of acting to enforce a beneficiary's rights" (DB Opp. to MTD at 31-32).  Nonetheless, Plaintiffs attempt now to press these impossible claims upon the Court.

**1.**     <u>**The Law Does Not Permit BoA to Bring Adversarial Claims Against Itself**</u>

Generally speaking, courts do not recognize purportedly adversarial claims brought by a party against itself.  Federal courts "are limited by the case-or-controversy requirement of Art. III to adjudication of actual disputes between adverse parties."  *Richardson v. Ramirez*, 418 U.S. 24, 36 (1974); *see Princeton Univ. v. Schmid*, 455 U.S. 100, 102 (1982) ("We do not sit to … give advisory opinions about issues as to which there are not adverse parties before us.").  The New York Constitution is in accord.  *See Rosenzweig v. N.Y. State Surrogate's Court*, 255 N.Y.S.2d 618, 620 (Sup. Ct. 1965) ("[T]here is a constitutional requirement of an actual controversy

between adverse parties. … The presence of a real controversy is a necessary prerequisite to the exercise of the judicial function in rendering a determination." (quotation marks and citations omitted)).  The "case or controversy" requirement ensures that argument is presented effectively, *see Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 288 (2008), and ensures that "honest and actual antagonistic assertion of rights" that is "a safeguard essential to the integrity of the judicial process," *see United States v. Johnson*, 319 U.S. 302, 305 (1943); *see also Penn. Gen. Ins. Co. v. Austin Power Co.*, 68 N.Y.2d 465, 472 (1986) (insurer may not be subrogated to claim against its own insured due in part to "potential for conflict of interest that is inherent in these situations").

Based upon these core constitutional principles, courts repeatedly have recognized that, as a general rule, a party cannot bring adversarial claims against itself.  *See Globe & Rutgers Fire Ins. Co. v. Hines*, 273 F. 774, 777 (2d Cir. 1921) ("It is elementary that the same person cannot be both plaintiff and defendant at the same time in the same action."); *Trs. of the First Society of the Methodist Episcopal Church v. Stewart*, 27 Barb. 553 (N.Y. Sup. Ct. 1858) ("No party can be both plaintiff and defendant in an action."); *see also South Spring Hill Gold-Min. Co. v. Amador Medean Gold-Min. Co.*, 145 U.S. 300, 301 (1892) (dismissing appeal after defendant and plaintiff corporations merged to become one entity); *Cleveland v. Chamberlain*, 66 U.S. 419, 425-26 (1861) (dismissing appeal after defendant purchased debt upon which plaintiff had sued); *Boller v. Nat'l Mediation Bd.*, 647 F. Supp. 1060, 1062 (S.D. Tex. 1986) (dismissing TWA as defendant in consolidated cases because it was plaintiff in one of those cases and "TWA cannot sue itself"); *Evmar Oil Corp. v. Getty Oil Co.*, No. 76-4039, 1978 WL 1067, at *13 (C.D. Cal. Mar. 17, 1978) ("Getty, obviously, cannot sue itself."); *Bokat v. Getty Oil Co.*, 262 A.2d 246, 249 (Del. 1970) (rejecting "anomalous situation of a corporation suing itself for its own benefit").[3]  Although there may be some narrow exceptions to this rule—as, for

---

[3] The absurdity of a company suing itself has reached popular culture.  *See, e.g.*, "Coke Sues," *available at* http://www.youtube.com/watch?v=YS7qO8O5jLs (Coke Zero advertising campaign).

example, where a lender bank seeks a judicial foreclosure to release a lien in which it has an interest, or in other contexts not involving truly adversarial claims—no such exception is applicable here.

Courts have rejected "sue itself" claims in diverse areas of the law and over centuries of jurisprudence.  A subrogee insurer may not seek to recover damages from a party that is owned by the subrogor insured.  *See Phoenix Ins. Co. v. Erie & W. Transp. Co.*, 117 U.S. 312, 322 (1886) (where two ships owned by one person collided, insurer of injured ship could not recover against tortfeasor ship "because the assured, the owner of both ships, could not sue himself"); *see also Penn. Gen. Ins. Co.*, 68 N.Y.2d at 472 (insurer may not be subrogated to claim against its own insured).  Likewise, a shareholder may not bring a derivative claim on behalf of a corporate entity against that same entity.  *See Hayton Farms, Inc. v. Pro-Fac Co-op., Inc.*, No. C10-520-RSM, 2011 WL 2898651, at *5 (W.D. Wash. July 18, 2011); *Hyman v. N.Y. Stock Exchange, Inc.*, 848 N.Y.S.2d 51, 53 (1st Dep't 2007) (rejecting the "confounding possibility that a shareholder of a corporation could bring a derivative action on behalf of the corporation against the corporation itself").  And trust law recognizes as "illusory" the prospect of litigation by a fiduciary against itself.  In *Tassinare v. Am. Nat'l Ins. Co.*, 32 F.3d 220 (6th Cir. 1994), the court rejected the argument that company directors, as ERISA plan fiduciaries, breached their fiduciary duties by failing to sue themselves, as employers, to compel plan contributions.  *Id.* at 224 (where employer and plan fiduciary were the same party, any lawsuit was "totally illusory").

The Second Circuit considered and rejected a "sue itself" claim in *Cruden v. Bank of New York*, 957 F.2d 961 (2d Cir. 1992).[4]  *Cruden* involved a "no action" clause in a bond indenture agreement, which prevents a debenture holder from bringing a lawsuit unless it first requests that the trustee do so.[5]  That demand requirement, the court held, cannot apply to lawsuits against the

---

[4] BNP previously cited *Cruden* in pressing its former position that BoA would not sue itself "[f]or obvious reasons."  BNP Opp. to MTD at 31-32.

[5] A "no action" clause protects "securitizations—and in turn other certificateholders—from the expense of litigating an action brought by a small group of certificateholders that most investors would consider not to be in their collective economic interest."  *Ellington Credit Fund, Ltd. v.*

trustee itself because "it would be absurd to require the debenture holders to ask the Trustee to sue itself." *Id.* at 968; *see also Peak Partners, LP v. Republic Bank*, 191 F. App'x 118, 126 n.11 (3d Cir. 2006) ("Peak was not required to comply with the no-action clause with regard to its suit against U.S. Bank because it would have required 'U.S. Bank, in effect, to sue itself.'"); *RJ Capital, S.A. v. Lexington Capital Funding III, Ltd.*, No. 10 Civ. 25 (PGG), 2011 WL 3251554, at *8 (S.D.N.Y. July 28, 2011) (rejecting position that plaintiff should "demand that the Trustee initiate proceedings against itself").

The prohibition applies even if a party acts in different capacities, as the Second Circuit held long ago. *See Globe & Rutgers*, 273 F. at 777 ("[T]he rule has been applied where the same person sues and defends in different capacities." (citations omitted)); 59 Am. Jur. 2d Parties § 3 ("[O]ne person cannot be both plaintiff and defendant in the same action. This rule applies regardless of the character of the action, even where such person sues in one capacity and defends in another."). Thus, in *Bederman v. Moskowitz*, 139 N.Y.S.2d 352 (Sup. Ct. 1955), the court held that a plaintiff suing for conversion in her individual capacity could not be made a defendant in her representative capacity as executrix. *Id.* at 353; *see also Teachers Ins. & Annuity Ass'n v. CRIIMI MAE Servs. Ltd.*, 681 F. Supp. 501, 508 (S.D.N.Y. 2010) (corporation could not be expected to sue its subsidiary even in its role as independent trust servicer); *Redevelopment Agency v. City of Berkeley*, 80 Cal. App. 3d 158, 165 (1978) (contrary to public policy "for one person to control both sides of litigation" even when party sues in one capacity and defends in another).

In sum, Plaintiffs seek to impose liability upon BoA for not bringing a claim of the type that courts consistently have deemed legally impossible under the above precedents. Plaintiffs' theory of liability fails as a matter of law.

---

*Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 184 (S.D.N.Y. 2011). These clauses often contain a requirement that before a certificateholder may sue a trustee, the holder must prove that it represents at least 25% of the certificateholders' interests. If a trustee holds certificates itself, a "no action" clause can create a situation where certificateholders are not able to sue the trustee unless the trustee agrees to sue itself.

2.     **The Facility Documents Do Not Require BoA to Sue Itself**

Plaintiffs attempt in vain to locate in the Facility Document language requiring BoA to do what the law does not permit.  But none of the contract provisions that Plaintiffs identify states or even implies that BoA somehow could be required to sue itself.  *See* BNP SAC ¶¶ 219, 229; DB SAC ¶¶ 276-77, 299.

Section 6.02 of the Security Agreement, upon which Plaintiffs rely, limits the Collateral Agent's obligations—even in response to a demand by noteholders—to actions that are available under law:

> If any Indenture Event of Default under the Indenture shall have occurred and be continuing, the Collateral Agent may, and at the direction [of Plaintiffs] shall, subject to the proviso in Section 11.2 of the Mortgage Loan Purchase Agreement, exercise any rights and remedies available to it under applicable law …

St. John Decl., Ex. C.  BoA suing itself for damages for breach of contract and related torts is not a right or remedy that is "available … under applicable law."  Similarly, Section 8.04 of the Security Agreement, also cited by Plaintiffs, provides:

> In any instance in which the Collateral Agent is permitted to take action hereunder, the Collateral Agent shall, except as expressly provided herein or in the Indenture, act in accordance with the written or electronic instructions received, if any, from [Plaintiffs] or, if specifically required herein or in the Indenture, by the Indenture Trustee or by [Plaintiffs].

*Id.* at § 8.04.  This provision limits the Collateral Agent's obligations to instances in which the Collateral Agent "is permitted to take action hereunder"—a category that cannot include the legally impermissible act that Plaintiffs contemplate.  Nor does Section 10.2(e) of the Base Indenture support Plaintiffs' claims.  It merely ensures indemnity and other protections in the event that the Trustee is required by other provisions of the Indenture to act:

> The Indenture Trustee shall be under no obligation to exercise any of the rights or powers vested in it by this Base Indenture, any Supplement or any Facility Document, or to institute, conduct or defend any litigation hereunder or in relation hereto, at the request, order or direction of [Plaintiffs], pursuant to the provisions of this Base Indenture, any Supplement or any Facility Document, unless [Plaintiffs] shall have offered to the Indenture Trustee security or indemnity satisfactory to the Indenture Trustee against the costs, expenses and liabilities which may be incurred therein or thereby; nothing contained herein shall, however, relieve the

> Indenture Trustee of the obligations, upon the occurrence of a default by the Issuer (which has not been cured or waived), to exercise such of the rights and powers vested in it by this Base Indenture, any Supplement or any Facility Document, and to use the same degree of care and skill in their exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs.

St. John Decl., Ex. D.  This provision does not require the Trustee to take any specific action, much less mandate that BoA sue itself or anyone else.  And it contemplates that if BoA were to act on behalf of Ocala or the noteholders, it would be through an exercise of "rights or powers vested in it by this Base Indenture, any Supplement or any Facility Document," none of which purports to, or could, confer upon BoA the right or power to "sue itself," and that any such exercise must be reasonable under the circumstance—which cannot include bringing a baseless claim.

Adopting Plaintiffs' reading of these contract provisions would "produce a result that is absurd, commercially unreasonable or contrary to the reasonable expectations of the parties." *In re Lipper Holdings, LLC*, 766 N.Y.S.2d 561, 562 (1st Dep't 2003) (citations omitted); *see Law Debenture Trust Co. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) (interpretation may not "strain the contract language beyond its reasonable and ordinary meaning" (internal quotation marks and citations omitted)).  Indeed, Plaintiffs' theory would produce a result that courts routinely have characterized as absurd.  *See, e.g.*, *Cruden*, 957 F.2d at 968 ("[I]t would be absurd to require the debenture holders to ask the Trustee to sue itself."). It would produce a result that is commercially unreasonable.  *See, e.g.*, *CCG Assocs. I v. Riverside Assocs.*, 556 N.Y.S.2d 859, 863 (1st Dep't 1990) (describing demand that a partnership sue itself as "self-evidently" "futile").  And it would produce a result contrary to the reasonable expectations of the parties.  *See Ellington Credit Fund*, 837 F. Supp. 2d at 186 ("[T]here is 'an important difference between asking the trustee to sue itself—an "absurd" requirement [the Court] *presume[s] the parties did not intend*—and asking it to sue a third party, even when the investor alleges wrongdoing by the trustee.'" (emphasis added) (citation omitted)).

The only reason the Court is confronted with this tortured thesis is that Plaintiffs are straining to find a way to read into the Custodial and Depositary Agreements rights for which

they could have bargained, but did not—namely, the right to bring suit in their own name to enforce those agreements. "Deliberate choices by 'sophisticated, counseled parties dealing at arm's length' in a 'multimillion dollar transaction' must be given effect." March 2011 Order, 778 F. Supp. 2d at 410 (quoting *Chimart Assocs. v. Paul*, 66 N.Y.2d 570, 574-75 (1986)). "The parties undoubtedly knew how to confer standing to Plaintiffs in different capacities when they wished to do so." March 2011 Order, 778 F. Supp. 2d at 410. Plaintiffs seek to circumvent the intent of the parties to the Custodial and Depositary Agreements (and the Court's March 2011 Order) by trying to enforce those contracts through rights that they had under other contracts. That is improper. *See Nationwide Auction Co. v. Lynn*, No. 90 Civ. 7643, 1996 WL 148489, at *11 (S.D.N.Y. Apr. 1, 1996) ("To allow a third party to enforce a promise of which it was not an intended beneficiary would run contrary to well-settled law."). Plaintiffs, sophisticated investors, agreed to buy Ocala notes knowing that BoA played multiple and potentially conflicting roles in the Ocala facility. Having done so, they cannot now claim that BoA should be held liable for not bringing suit against itself.

### 3.    BoA Could Not Have Assigned an Invalid Claim Against Itself

BNP's claim, in the alternative, that BoA breached the Security Agreement, Base Indenture, and its fiduciary duties by failing to assign its purported claims against itself is equally unavailing.

Because an assignor may not "confer any greater rights than at the time of such assignment he had himself," *Squire v. Greene*, 52 N.Y.S. 1013, 1017-18 (2d Dep't 1898), BoA could not have cured the invalidity of any purported claims against itself by assigning them to a third party. Although Plaintiffs' theory is nearly unprecedented, one state court decision is instructive and dispositive against the theory. In *West Penn Admin., Inc. v. Pittsburgh Nat'l Bank*, 433 A.2d 896 (Pa. Super. 1981), the Pennsylvania appellate court rejected the plaintiff assignee's attempt to sue a bank because the assignment had come from that same bank: "It is axiomatic that a party may not sue himself. Such an action would perforce have an absurd

result." *Id*. at 901.  The defendant bank "as payee could not, therefore, bring an action against itself as drawee [] [because] '(a)n assignment does not confer upon the assignee any greater right, power, or interest than that possessed by the assignor.'" *Id.* at 901 (internal citations omitted).  In short, the defect in Plaintiffs' claim cannot be cured by assigning the claim to another.

Nor can the Facility Documents be construed to require such an assignment.  Nothing in the Facility Documents states or even suggests that BoA must assign claims against itself to the Plaintiffs or to anyone else.  The provisions cited by Plaintiffs, discussed above, do not contain any such requirement.  Moreover, "the language of a business contract must be construed in the light of what a business man would reasonably expect to give or receive, to perform or suffer, under its terms." *Shirai v. Blum*, 239 N.Y. 172, 179 (1924).  BoA—upon entering into the Security Agreement and Base Indenture *with Ocala*—could not reasonably have expected (i) to have positioned itself to acquire claims against itself as Custodian or Depositary; or (ii) to have obligated itself to assign those claims to third parties that were neither parties to, nor intended third-party beneficiaries of, the Custodial or Depositary Agreements.  BNP's alternative theory is just as untenable as Plaintiffs' principal "sue itself" theory and should be rejected.

### 4.   Certain "Sue Itself" Claims Should Be Dismissed as Duplicative

Even if the Court were to allow claims based upon Plaintiffs' "sue itself" theory, several of those putative claims improperly duplicate claims already pled in the SACs.  *See* August 2011 Order, 2011 WL 3847376 at *5.  If separate causes of action arise "from the same facts … and [do] not allege distinct damages," those duplicative claims may be dismissed.  *See Symbol Techs., Inc. v. Deloitte & Touche, LLP*, 888 N.Y.S.2d 538, 544 (2d Dep't 2009).

*First*, Plaintiffs allege that BoA breached the Base Indenture and its fiduciary duties by not suing itself for breaching *the Security Agreement*.  Those claims duplicate Plaintiffs' existing claims for breach of the Security Agreement, which are their First Causes of Action based upon their status as third party beneficiaries of that Agreement, and which do not depend upon a "sue

11

itself" theory.  *See* DB SAC ¶ 311 ("As set forth in Count I above, BOA breached its contractual duties as Collateral Agent under the Security Agreement."); BNP SAC ¶ 232 (same).  These separate causes of action arise from the same facts, do not allege distinct damages, and therefore should be dismissed.  *See Symbol Techs.*, 888 N.Y.S.2d at 544.

*Second*, Plaintiffs allege *three times* in their SACs that BoA failed to sue itself for conversion—alleged breaching the Security Agreement, the Base Indenture, and its fiduciary duties—in addition to the standalone conversion claim that are their Thirteenth Causes of Action. A conversion claim that merely duplicates a breach of contract claim is improper and should be dismissed.  *See Wechsler v. Hunt Health Sys., Ltd.*, 330 F. Supp. 2d 383, 431 (S.D.N.Y. 2004); *ESI, Inc. v. Coastal Power Prod., Co.*, 995 F. Supp. 419, 433 (S.D.N.Y. 1998).  Therefore, if the Court permits any of Plaintiffs' "sue itself" claims to proceed, Plaintiffs' standalone conversion claims should be dismissed as duplicative.

**B.**     **Plaintiffs' Tort Claims Improperly Convert Contract Duties into Tort Duties**

Like their "sue itself" claims, Plaintiffs' new tort claims—their Seventh and Eighth Causes of Action—attempt to restore, in a different form, the contract claims that the Court dismissed in its March 2011 Order.  Plaintiffs cannot seek recovery in tort because the duties upon which they are suing were created by the Facility Documents and therefore cannot support a tort claim.  *See* W. Keeton *et al.*, PROSSER & KEETON ON TORTS (5th ed. 1984) § 92 ("[I]f the alleged obligation to do or not to do something that was breached could not have existed but for a manifested intent, then contract law should be the *only* theory upon which liability would be imposed.").  That Plaintiffs lack standing to sue for breaches of certain agreements because they are not third party beneficiaries does not mean they may re-cast BoA's contractual duties under those agreements as tort claims.

**1.**     **Plaintiffs Do Not State a Claim for Negligence**

Plaintiffs fail to state a claim for negligence for two related reasons:  they do not allege that BoA breached any duty independent of duties created by contract; and their claims are

barred by New York's economic loss rule.

Plaintiffs' own pleadings make clear that the duties upon which they purport to base their negligence claims derive entirely from the Facility Documents. "New York law does not recognize a cause of action for the negligent performance of a contract." *RLI Ins. Co. v. King Sha Group*, 598 F. Supp. 2d 438, 444 (S.D.N.Y. 2009). Accordingly, "merely charging a breach of a 'duty of due care,' employing language familiar to tort law, does not, without more, transform a simple breach of contract into a tort claim." *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 390 (1987). To plead a tort claim, a plaintiff must allege an independent duty that "spring[s] from circumstances extraneous to, and not constituting elements of, the contract." *Id.* at 389; *see* August 2011 Order, 2011 WL 3847376 at *6 n.5 ("It is well established that a tort claim cannot be predicated on a mere breach of contract, but may only succeed if the plaintiff alleges the violation of an independent duty."). "If the only interest at stake is that of holding the defendant to a promise, the courts have said that the plaintiff may not transmogrify the contract claim into one for tort." *JPMorgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393, 401 (S.D.N.Y. 2004) (quoting *Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897, 899 (2d Cir. 1980)).

Plaintiffs allege that "[n]egligence pervaded virtually every aspect of Bank of America's involvement in the Ocala Facility." BNP SAC ¶ 250; DB SAC ¶ 338. But "every aspect" of BoA's involvement in Ocala upon which Plaintiffs rely was defined by contract. For example, Plaintiffs criticize BoA's performance of its contractual duties—citing, for example, BoA's allegedly "negligent certifications" of Borrowing Base Certificates pursuant to the Depositary Agreement and allegedly negligent disbursements of Ocala funds pursuant to the Security Agreement. *Id.*[6] In support of these claims, Plaintiffs cite nothing other than the contractual

---

[6] BNP, but not DB, alleges that BoA also had an extra-contractual duty "based in part on its post-default duties to BNPP." BNP SAC ¶ 248. But those "post-default duties," even if they were triggered (which they were not), were created and defined by contract as well. *See* Base Indenture (St. John Decl., Ex. D) § 9.1.

duty to perform a particular function and the allegedly negligent non-performance of that contractual function. *Id.* That is insufficient to allege an extra-contractual duty, particularly in a case involving sophisticated commercial entities. *See, e.g.*, *Deutsche Bank Secs., Inc. v. Rhodes*, 578 F. Supp. 2d 652, 670 (S.D.N.Y. 2008) ("[C]ourts have found that in actions involving the contractual duties of corporations and financial institutions, a negligence action may not be maintained and parties must proceed under a contract theory."). "[T]he allegedly tortious conduct must be such that there would be liability even if no contract existed." *Robehr Films, Inc. v. Am. Airlines, Inc.,* No. 85 Civ. 1072 (RPP), 1989 WL 111079, at *8 n.4 (S.D.N.Y. Sept. 19, 1989) (citing *Hargrave*, 636 F.2d at 897), *aff'd*, 902 F.2d 1556 (2d Cir. 1990); *cf. Roberts v. Champion Int'l Inc.*, 382 N.Y.S.2d 790, 791 (1st Dep't 1976) ("Nor will plaintiff's attempt to plead a cause sounding in tort or in another form save the complaint for, 'Whatever the form of the action at law may be, if the proof of a promise or contract, void by the statute (of frauds), is essential to maintain it, there can be no recovery.'" (citation omitted)). Here, but for the Facility Documents, BoA would have had none of the duties upon which Plaintiffs' tort claims are based.

Plaintiffs' negligence claims also are barred by the economic loss rule. "New York law holds that a negligence action seeking recovery for economic loss will not lie." *County of Suffolk v. Long Island Lighting Co.*, 728 F.2d 52, 62 (2d Cir. 1984); *see Labajo v. Best Buy Stores, L.P.*, 478 F. Supp. 2d 523, 529 (S.D.N.Y. 2007) ("[New York] follow[s] the economic loss doctrine, which bars the recovery of economic loss in negligence cases."). *See also Deutsche Bank Sec., Inc. v. Rhodes*, 578 F. Supp. 2d 652, 670 (S.D.N.Y. 2008) ("in actions involving the contractual duties of corporations and financial institutions, a negligence action may not be maintained and parties must proceed under a contract theory"). Plaintiffs seek the same damages under their new negligence claims as under their contract claims: payment on the Ocala notes they purchased on July 20, 2009. Those damages are recoverable, if at all, in contract and cannot support a separate tort claim. *See Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 220 (S.D.N.Y. 2007) ("New York courts restrict plaintiffs who have 'suffered "economic loss," but not personal or property injury, to an action for the

benefits of their bargains.'  Thus, '[i]f the damages suffered are of the type remediable in contract, a plaintiff may not recover in tort.'" (citations omitted)).

Plaintiffs seek to avoid these common law limitations on tort claims by suggesting that the Facility Documents themselves created new claims against BoA for negligence, even if there is no breach of any other provision of the contract.  *See* BNP SAC ¶ 249 (characterizing contract provisions as stating that BoA is "liable for negligence"); DB SAC ¶ 337 (same).  But that argument mischaracterizes the cited contract provisions.  Section 4.10 of the Security Agreement, for example, states that the Collateral Agent shall not be liable "for any action taken or omitted to be taken by it … relative to any of the Assigned Collateral, except for its … own negligence, fraud, bad faith or willful misconduct."  St. John Decl., Ex. C.  And Section 8.01 states that "[n]either the Collateral Agent, nor any of its respective directors, officers, employees, affiliates or agents, shall be liable to any Secured Party or the Issuer for any action taken or omitted to be taken by it or them hereunder, or in connection herewith, *except for its own negligence, fraud, bad faith or willful misconduct*."  *Id.*  Section 10.1 of the Indenture contains similar language.[7]  St. John Decl., Ex. D.  Plaintiffs' reading of these provisions to authorize tort claims based upon alleged breaches of contract is wrong for multiple reasons.

*First*, nothing in the cited provisions purports to override the general rule of New York law that contractual duties may not be transformed into tort claims.  On the contrary, New York courts consistently construe liability limiting provisions such as Sections 4.10 and 8.01 to *preclude* liability *even for breach of the existing contract terms* unless there is a breach *and* it is caused by defendant's negligence or other wrongful conduct.  In other words, the provision does

---

[7] Inexplicably, Plaintiffs also cite provisions of the Depositary and Custodial Agreements for their claim that the Facility Documents preserved claims for negligence, but these Agreements are unavailing for that purpose because the Court already has held that Plaintiffs lack standing to enforce them, and Plaintiffs' theory under this Cause of Action does not depend on a "sue yourself" theory.  In any event, the cited provisions of the Depositary and Custodial Agreements, like those of the Security Agreement and the Indenture, are meant to limit BoA's contractual liability, and do not purport to create new and independent tort claims deriving from alleged breaches of contractual duties.

not create a new cause of action for negligent performance of a contract apart from any breach of the express contract terms, but rather imposes an additional requirement that a plaintiff prove *both* a breach of an express contractual duty, *and* that the breach resulted from the defendant's negligence. *See*, *e.g.*, *Digital Broad. Corp. v. Ladenburg, Thalmann & Co., Inc.*, 883 N.Y.S.2d 186, 187 (2009) (dismissing breach of contract claim where plaintiffs failed to prove breach *and* that conduct was grossly negligent, pursuant to an exculpatory provision); *accord Trump Village Section 3, Inc. v. N.Y. State Housing Fin. Agency*, 739 N.Y.S.2d 37, 38 (2002).  This reading comports with the purpose of such provisions to *preclude* or *limit* otherwise valid causes of action, not to create new rights or duties.  *See, e.g.*, *Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*, No. 03 Civ. 1537, 2003 WL 23018888, at *9 (S.D.N.Y. Dec. 22, 2003) (Mukasey, J.) (liability-limiting provision did not create a cause of action because "the plain intent of the parties to the contract" was "to limit duties rather than to generate an additional duty").

*Second, e*ven if these provisions could be read to refer to tort claims apart from the contract, they do not purport to override the general rule that contract duties cannot be transformed into tort claims.  *See, e.g.*, *Clark-Fitzpatrick*, 70 N.Y.2d at 390.  At most, the provisions might be read to preserve independent tort claims, deriving from sources other than the Facility Documents—a theory that, as shown above, is not alleged by Plaintiffs here.

*Third,* Plaintiffs' theory is expressly precluded by a separate clause of Section 8.01 of the Security Agreement, which states that "nothing herein shall be deemed … to impose on the Collateral Agent any obligations other than those for which *express* provision is made herein." St. John Decl., Ex. C.  This precludes reading the *express* liability-*limiting* provision as *implicitly creating* new obligations not specified in the Agreement.  And, as noted above, New York courts do not recognize a contractual cause of action for "negligent" performance of a contract. *See RLI Ins. Co. v. King Sha Group*, 598 F. Supp. 2d 438, 444 (S.D.N.Y. 2009); *Clark-Fitzpatrick*, 70 N.Y.2d at 389 (breach of contract cannot be asserted as a tort unless a legal duty independent of the contract has been violated); *Hamilton v. Hertz Corp.*, 498 N.Y.S.2d 706, 709

(1986) (claim for "negligent performance" of a contract "simply does not exist at law").

*Finally,* the Court already has rejected Plaintiffs' view, in two separate rulings in this case.  The Court held that "Plaintiffs may bring a claim for losses caused by BoA's *negligence under the Security Agreement or the Base Indenture,* as to both of which they have standing, but not pursuant to the indemnification provision of the Depositary Agreement."  March 2011 Order, 778 F. Supp. 2d at 410.  The Court correctly viewed Plaintiffs' negligence-based claims, if any, as part of their breach of contract theories—not as separate tort claims arising from the same contractual duties.  If that had not been the Court's meaning, then the Court's references to the Security Agreement, Base Indenture, and Plaintiffs' standing under those contracts would make no sense.  It would make even less sense for the Custodial and Depositary Agreements— contracts to which Plaintiffs were not parties, and of which they were not intended third-party beneficiaries—to have preserved extra-contractual negligence claims to be brought by Plaintiffs against BoA.  And nothing in the case law supports Plaintiffs' attempt to twist limitations on BoA's liability for breach of contract into sources of liability in tort.  *See Digital Broad. Corp. v. Ladenburg, Thalmann & Co.*, 883 N.Y.S.2d 186, 187 (1st Dep't 2009) (applying liability-limiting provision requiring breach of contract to be grossly negligent); *Trump Village*, 739 N.Y.S.2d at 38 (same); *cf. Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*, No. 03 Civ. 1537 (MBM), 2003 WL 23018888, at *9 (S.D.N.Y. Dec. 22, 2003) (exculpatory clause exists "to limit duties rather than to generate an additional duty").  Separately, the Court recognized—in the course of dismissing BoA's third-party claims against Plaintiffs' affiliates— that a party may not transform contract obligations into tort liability.  *See* June 2012 Order, 866 F. Supp. 2d at 268-69.

Accordingly, Plaintiffs' negligence theories fail as a matter of law.

**2.     Plaintiffs Do Not State a Claim for Negligent Misrepresentation.**

Plaintiffs also have sought to refashion their dismissed contract claims as alleged negligent misrepresentations.  *See* BNP SAC ¶¶ 255-68; DB SAC ¶¶ 341-49.  A plaintiff

alleging such a claim under New York law must plead, consistent with Fed. R. Civ. P. 9(b), specific facts showing that "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000).[8]

According to Plaintiffs' own allegations, each of the alleged misrepresentations upon which their claims depend was made in the course of (or in breach of) BoA's performance of duties created by contract.  Plaintiffs allege that, in deciding to purchase Ocala notes on July 20, 2009, they relied upon three sets of misrepresentations:  (i) daily collateral reports that overstated the collateral securing their investments; (ii) monthly Borrowing Base Certificates that also overstated that collateral; and (iii) BoA's issuance of notes on behalf of Ocala, which, according to Plaintiffs, effectively constituted a representation that their investments were fully collateralized.  *See* BNP SAC ¶¶ 260-64, 267; DB SAC ¶¶ 343-48.  Plaintiffs allege that each of these alleged misrepresentations was made in the course of BoA's performance of duties under the Custodial and Depositary Agreements.  BNP alleges that BoA's "misrepresentations in the [daily] Shipped Reports and other documents breached its contractual obligations" (BNP SAC ¶ 146); DB alleges that BoA provided those reports "[i]n connection with its duties under the Custodial Agreement" (DB SAC ¶ 162).  BNP alleges that "[u]nder the terms of the Depositary Agreement, [BoA] was required to certify the Borrowing Base Certificates" (BNP SAC ¶ 156); DB alleges that BoA "breached its duties under the Depositary Agreement" by "[f]alsely certifying that the Borrowing Base Condition was satisfied pursuant to § 4(d) of the Depositary Agreement" (DB SAC ¶ 307).  And both Plaintiffs allege that BoA breached the Depositary Agreement by issuing the July 20, 2009 notes—which they characterize as a "misrepresentation"

---

[8] Courts in this district "have required negligent misrepresentation claims to satisfy Rule 9(b)." *Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 254 (S.D.N.Y. 2011).

in and of itself.  *See, e.g.*, BNP SAC ¶ 63 (alleging that "[t]he Depositary Agreement required [BoA] to certify the Borrowing Base Condition … before issuing new notes."); DB SAC ¶ 264 (citing BoA's duty, "as Depositary, to cease issuing Ocala Notes").[9]

Plaintiffs' negligent misrepresentation claims fail for the same reasons as their negligence claims:  they improperly attempt to transform contract duties into tort duties, *see LaSalle Bank, N.A. v. Citicorp Real Estate Inc.*, No. 02 Civ. 7868 (HB), 2003 WL 1461483, at *4 (S.D.N.Y. Mar. 21, 2003) (dismissing negligent misrepresentation claim and noting "problem of invoking tort law for claims that sound in contract"); *McMahan & Co. v. Bass*, 673 N.Y.S.2d 19 (1st Dep't 1998) (dismissing negligent misrepresentation claim where "alleged tortious conduct [was] innate to the performance of the contract"); and they are barred by the economic loss rule, *see Cherny v. Emigrant Bank*, 604 F. Supp. 2d 605, 609 (S.D.N.Y. 2009) (dismissing negligent misrepresentation claim pursuant to economic loss rule ).  *See generally supra* Part III.B.1.

Even if Plaintiffs could base their tort claims upon breaches of contract duties, they do not state a claim because, as shown below, (1) the alleged misrepresentations were made in the course of BoA's performance of its duties under the Custodial and Depositary Agreements, of which Plaintiffs are not third party beneficiaries; (2) Plaintiffs disclaimed any "special relationship" with BoA in the agreements by which they purchased Ocala notes; and (3) Plaintiffs have not alleged that they reasonably relied upon the alleged misrepresentations.

### a. Contracts That Plaintiffs Lack Standing to Enforce Could Not Have Created a Duty of Care

Plaintiffs were neither parties to, nor intended beneficiaries of the Custodial and Depositary Agreements—the only contracts pursuant to which BoA allegedly made misrepresentations.  *See* March 2011 Order, 778 F. Supp. 2d  at 408-15.  Therefore, BoA owed

---

[9] BNP alleges two additional misrepresentations, which also arise out of BoA's contract duties: (i) a reference in the March 27, 2009 letter agreement—which the Court has held unenforceable, *see* March 2011 Order, 778 F. Supp. 2d at 411—to "duties [BoA] in its capacity as Depositary performs under the Depositary Agreement" (BNP SAC ¶ 265); and (ii) BoA's statement in a February 6, 2009, meeting that "Matt Smith [of BoA] was responsible [under the Facility Documents] for confirming that Ocala remained properly collateralized" (BNP SAC ¶ 266).

Plaintiffs no relevant duty of care—in contract or in tort. "[B]efore a party may recover in tort for pecuniary loss sustained as a result of another's negligent misrepresentations there must be a showing that there was either actual privity of contract between the parties or a relationship so close as to approach that of privity." *Travelers Cas. & Sur. Co. v. Dormitory Auth.*, 734 F. Supp. 2d 368, 379-80 (S.D.N.Y. 2010) (quoting *Parrott v. Coopers & Lybrand, L.L.P.*, 95 N.Y.2d 479, 483 (2000). Courts have dismissed negligent misrepresentation claims where the alleged duty arose from a contract that the plaintiff lacked standing to enforce. *See, e.g.*, *Long Island Lighting Co.*, 728 F.2d at 63 (dismissing contract claim for lack of privity and dismissing misrepresentation claim because plaintiffs lacked standing to rely on representations); *Travelers*, 734 F. Supp. 2d at 387 (dismissing contract claim for lack of privity and dismissing negligent misrepresentation claim due to lack of duty owed).

In fact, the comprehensive structure created by the Facility Documents bars Plaintiffs' effort to add new, extra-contractual duties. *See King County v. IKB Deutsche Industriebank AG*, 863 F. Supp. 2d 288, 303 (S.D.N.Y. 2012) ("[T]he presence of a contract or a financial transaction that is 'in the nature of contract' can be a strong indicator that a plaintiff was not owed a legal duty separate and apart from obligations bargained for and subsumed within the transaction."); *Winnick*, 350 F. Supp. 2d at 401 ("[I]n commercial contexts in which a contract exists, the duty attendant to [the] special relationship 'must spring from circumstances extraneous to, and not constituting elements of the contract.'" (quoting *Clark-Fitzpatrick*, 70 N.Y.2d at 389)).[10]

---

[10] To the extent Plaintiffs' theory is that the alleged misrepresentations breached duties created by contracts that Plaintiffs *can* enforce, any such claim should be dismissed as duplicative of their pending contract claims. "If the duty between the parties arose out of a contract, such that the contract required a correct representation, then any misrepresentation must be pled as a breach of contract, *not as a tort claim for negligent misrepresentation.*" *Madison Capital Co., LLC v. Alasia, LLC*, 615 F. Supp. 2d 233, 240 (S.D.N.Y. 2009) (emphasis added). In *Madison Capital*, where the contract "required defendants to … certify that certain conditions have been satisfied on a monthly basis," the court dismissed a misrepresentation claim alleging inaccurate certifications. *Id.* ("[T]he only basis for any duty … was the contract that defendants allegedly breached."). Similarly, in *Winnick*, where the contract required defendants to "certif[y] that the company was in compliance … at the time of each borrowing," the court dismissed a

### b.   Plaintiffs Expressly Disclaimed Any "Special Relationship"

Even if Plaintiffs could allege an independent duty of care, that duty did not arise from a "special relationship." *See Hydro Investors*, 227 F.3d at 20.  "[A]n arms-length commercial transaction can only give rise to a negligent misrepresentation claim if a special relationship exists between the parties such that plaintiff's reliance on defendant's representation was justifiable." *EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265, 281 (S.D.N.Y. 2004) (citing *Kimmel v. Schaefer*, 89 N.Y.2d 257, 263 (1996)).  "In ordinary commercial contexts, liability … is imposed 'only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified.'" *Winnick*, 350 F. Supp. 2d at 400 (quoting *Kimmel*, 89 N.Y.2d at 263)); *see Ixe Banco, S.A. v. MBNA Am. Bank, N.A.*, No. 07 Civ. 432 (LAP), 2008 WL 650403, at *12 (S.D.N.Y. Mar. 7, 2008) (dismissing negligent misrepresentation claim because "the face of the complaint indicates there is only an ordinary business relationship between the parties").

Plaintiffs allege two bases for a special relationship:  (i) Section 8.01 of the Security Agreement, which states that BoA (as Collateral Agent) and Plaintiffs had a relationship of "agent and principal;" and (ii) BoA's alleged unique knowledge of or access to information about "whether Ocala was solvent and whether [Plaintiffs'] investment was collateralized."[11] BNP SAC ¶¶ 257-59; DB SAC ¶ 342.  But both of these purported bases are barred by the Subscription and Purchase Agreement—the document that governed Plaintiffs' purchase of the notes, and in which they expressly disclaimed any such special relationship:

> In connection with the purchase of the Notes: (i) none of the Issuer, the

---

misrepresentation claim alleging false certifications.  350 F. Supp. 2d at 396; *see id.* at 401 ("Without the obligation imposed [by the contract], the defendants would be under no obligation to use special care to provide accurate financial information to the Banks; indeed, if not for the existence of the contract, they would have had no relationship to the Banks whatsoever.").

[11] BNP also cites BoA's status as post-default Indenture Trustee as an "additional basis" for a duty of care.  BNP SAC ¶ 257.  Yet Plaintiffs have not alleged facts sufficient to show that this duty was triggered at the time the alleged misrepresentations occurred.

Dealers, *the Collateral Agent* or the Servicer is acting as a fiduciary or financial or investment adviser for the Investor; (ii) the Investor has conducted its own due diligence and investigation with respect to its investment in the Notes . . . and the Investor is not relying (for purposes of making any investment decision or otherwise) upon any advice, counselor representations (whether written or oral) of the Issuer, the Dealers, *the Collateral Agent* or the Servicer; (iii) none of the Issuer, the Dealers, *the Collateral Agent* or the Servicer has given to the Investor (directly or indirectly through any other person) any assurance, guarantee, or representation whatsoever as to the expected or projected success, profitability, return, performance, result, effect, consequence, or benefit (including legal, regulatory, tax, financial, accounting, or otherwise) of its purchase; (iv) the Investor has consulted with its own legal, regulatory, tax, business, investment, financial and accounting advisers to the extent it has deemed necessary, and it has made its own investment decisions based upon its own judgment and upon any advice from such advisers as it has deemed necessary and not upon any view expressed by the Issuer, the Dealers, *the Collateral Agent* or the Servicer; and (v) the Investor has evaluated the rates, prices or amounts and other terms and conditions of the purchase and sale of the Notes with a full understanding of all of the terms, conditions and risks thereof (economic and otherwise), and is capable of assuming and wiling to assume (financially and otherwise) these risks and (vi) the Investor is a sophisticated investor.

Subscription & Purchase Agmt. for Short Term Notes (St. John Decl., Ex. G) § 2(e) (emphasis added).  In dismissing BoA's third-party complaint, the Court cited the *same language* to conclude that Plaintiffs disclaimed any fiduciary duty owed to them by the Note Dealers.  *See* June 2012 Order, 866 F. Supp. 2d at 268.  And the court in *HSH Nordbank AG v. UBS AG*, 941 N.Y.S.2d 59 (1st Dep't 2012), held that identical language precluded a special relationship under New York law and therefore barred a negligent misrepresentation claim as a matter of law.[12]

Even apart from Section 2(e), Plaintiffs have not alleged a special relationship.  Far from creating such a relationship, the "agent and principal" language cited by Plaintiffs *limits* the

---

[12] *See id.* at 76 ("The parties expressly agreed that they were dealing with each other at arm's length, that UBS was not acting as HSH's financial or investment advisor[,] and that HSH was 'not relying (for purposes of making any investment decisions or otherwise) upon any advice, counsel or representations . . . of [UBS].'  As a matter of law, therefore, HSH cannot allege that it had a 'special relationship' with UBS upon which a negligent misrepresentation claim may be predicated.").

duties that BoA owed Plaintiffs.  *See* St. John Decl., Ex. C, at § 8.01 ("The relationship … is that of agent and principal *only*, and nothing herein shall be deemed to constitute the Collateral Agent a trustee for any Secured Party or impose on the Collateral Agent any obligations other than those for which express provision is made herein." (emphasis added)).  And BoA's knowledge of and access to information about Ocala can hardly have been "unique or specialized" if Plaintiffs had knowledge and access—as they did—sufficient to know that Ocala was insolvent and that their investments were not fully collateralized.  *See, e.g.*, BNP SAC ¶¶ 155-57 (alleging that BNP requested to receive Borrowing Base Certificates on December 12, 2008, and that the December 22, 2008, Borrowing Base Certificate "showed that Ocala was insolvent").  Even viewed in isolation, BoA's knowledge and access did not create a special relationship as a matter of law.  "Nothing more than knowledge of the particulars of [a] company's business—and of the true situation underlying the misrepresentations pertaining to that business" does "not constitute the type of 'specialized knowledge' that is required in order to impose a duty of care in the commercial context."  *Winnick*, 350 F. Supp. 2d at 402; *see LaSalle Bank*, 2003 WL 146148 at *5 (no special relationship arose from "complex transaction between two sophisticated entities").  Indeed, this Court held that BoA's allegations that the Note Dealers were "aware of day-to-day activities of Ocala and TBW," had "frequent communications with the principals of TBW," and "enjoyed wide access to TBW" failed to "demonstrate that [Plaintiffs] reposed trust or confidence in [the Note Dealers] such that they gained a position of superiority over the Plaintiffs."  June 2012 Order, 866 F. Supp. 2d at 270.

### c.    Plaintiffs Expressly Disclaimed Reliance

Plaintiffs also expressly disclaimed any reliance upon the alleged misrepresentations at issue here.  *See Hydro Investors*, 227 F.3d at 21-22.  In assessing the element of reliance, courts must consider "the content of any agreements between them."  *Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 195 (2d Cir. 2003).  "[A] party cannot justifiably rely on a representation that is specifically disclaimed in an agreement."  *JM Vidal, Inc. v. Texdis*

*USA, Inc.*, 764 F. Supp. 2d 599, 623 (S.D.N.Y. 2011) (citations omitted).

In the Subscription and Purchase Agreement through which they purchased their Ocala Notes, Plaintiffs *expressly disclaimed* any reliance upon BoA, as set out above.  Plaintiffs acknowledged, among other things, that they were "sophisticated investor[s]" that had "conducted [their] own due diligence;" that they were "not relying (for purposes of making any investment decision or otherwise) upon any advice, counsel or representations" from BoA; and that they made "[their] own investment decisions based upon [their] own judgment and upon any advice from such advisers as [they have] deemed necessary and not upon any view expressed by" BoA.  St. John Decl., Ex. G, at § 2(e).  In addition, Section 8.01 of the Security Agreement provided that BoA "makes no warranty or representation to [Plaintiffs] … and shall not be responsible to [Plaintiffs] for any statements, warranties or representations made in or in connection with this Agreement or any other document relating to the Assigned Collateral." St. John Decl., Ex. C

Courts have held that similar disclaimers of the risks of complex commercial transactions bar a claim for negligent misrepresentation as a matter of law.  *See, e.g.*, *MBIA Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 916 N.Y.S.2d 54 (1st Dep't 2011) (no reasonable reliance "in light of specific disclaimers in the contracts, executed following negotiations between the parties, all sophisticated business entities, providing that plaintiff Lacrosse would not rely on defendants' advice, that it had the capacity to evaluate the transactions, and that it understood and accepted the risks"); *JPMorgan Chase Bank, N.A. v. Controladora Comerical Mexicana S.A.B. de C.V.*, No. 603215/08, 2010 WL 4868142, at *6-*10 (N.Y. Sup. Ct. Mar. 16, 2010) ("non reliance" and "evaluation and understanding" disclaimers barred negligent misrepresentation claim).

## C.      Plaintiffs' Contingent Quasi-Contract Claims Fail to State a Claim

Plaintiffs' new Ninth, Tenth, Eleventh, and Twelfth Causes of Action allege quasi-contract claims:  unjust enrichment, constructive trust, promissory estoppel, and negligent

performance of an assumed duty.  BNP also alleges, in its Fourteenth Cause of Action, promissory estoppel with respect to the March 27, 2009 Letter Agreement, which the Court has held unenforceable.  *See* March 2011 Order, 778 F. Supp. 2d at 411.  Plaintiffs plead these claims "in the alternative" to their breach of contract claims, "in the event the Ocala Facility Agreements are deemed to be void for any reason."  BNP SAC ¶ 271; *see* DB SAC ¶ 352.

### 1.    <u>BoA Was Not Unjustly Enriched at Plaintiffs' Expense</u>

"Under New York law, a plaintiff asserting a claim of unjust enrichment must show that the defendant was enriched at the plaintiff's expense and that equity and good conscience require the plaintiff to recover the enrichment from the defendant."  *Giordano v. Thomson*, 564 F.3d 163, 170 (2d Cir. 2009) (internal quotation marks omitted).

Plaintiffs' unjust enrichment claims concern purported "intra-day loans"[13] that BoA allegedly made to Ocala on each day that Ocala notes matured, including July 20, 2009, which purportedly enabled Ocala to repay maturing notes and made BoA an unsecured creditor of Ocala, at least until it was repaid the same day with funds received from Plaintiffs' purchase of new notes.  Plaintiffs allege that Ocala's repayment to BoA of the supposed intra-day loans constituted unjust enrichment at their expense.  *See* BNP SAC ¶¶ 269-74; DB SAC ¶¶ 350-55.

Even if Plaintiffs had a good faith basis in fact to support their makeweight assertion of "intra-day loans" by BoA to Ocala—which they cannot—their claims fail for three reasons: (i) repayment of any intra-day loans was authorized by the Depositary Agreement; (ii) repayment of a debt is not "unjust enrichment" as a matter of law; and (iii) any repayment would not have been at Plaintiffs' expense because Plaintiffs received everything they paid for, namely, new Ocala notes.

*First*, even if BoA had made intra-day loans (it did not), as Plaintiffs allege, the

---

[13] Despite specific requests from BoA, Plaintiffs have been unable to provide evidentiary support required by Fed. R. Civ. P. 11(b)(3) for their allegation that BoA made intra-day loans to Ocala. *See* St. John Decl., Ex. H.  BoA reserves its right to take any action, including seeking Rule 11 sanctions, based upon these groundless allegations.  Nonetheless, even if Plaintiffs had such support, their allegations fail to state a claim.

Depositary Agreement expressly authorized it to do so:

> It is understood that the Depositary may (but shall not be required to) make such a [short-term] deposit before the Depositary receives the proceeds of the sale [of the newly issued notes] in immediately available funds, by creating an overdraft in the Short Term Note Account.  If the Depositary elects to make such a deposit, the overdraft must be repaid prior to the end of the Business Day when made.  If, for any reason, this repayment obligation is not so satisfied, the overdraft shall be treated (i) as an advance by [BoA], in its individual capacity and not as Depositary hereunder, and (ii) for all purposes of this Agreement, the Indenture and Security Agreement, as Short Term Notes due and payable the following Business Day.

St. John Decl., Ex. B, at § 2(b); *see* DB SAC ¶ 71.  Thus, there was nothing "unjust" or offensive to "good conscience" about Ocala's alleged repayment of intra-day loans allegedly made by BoA; even under Plaintiffs' unsupported theory, such repayment was authorized by the express terms of the Agreement.  Accordingly, Plaintiffs were on notice that Ocala funds might be used to satisfy any intra-day loans made by BoA to Ocala—a point that defeats their claim that equity requires the funds to be returned.  *See Diesel Props S.R.L. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 56-57 (2d Cir. 2011) (no unjust enrichment where plaintiff was aware of agreement providing for transfer from third party to defendant); *Ringier Am., Inc. v. Land O'Lakes, Inc.*, 106 F.3d 825, 829 (8th Cir. 1997) (no unjust enrichment where plaintiff was aware of contractual relationship between third party and defendant).

*Second*, even if the Depositary Agreement is held void and unenforceable, all Plaintiffs have alleged is that BoA was repaid for a loan, and courts uniformly have held that such repayment cannot be unjust enrichment as a matter of law.  "[R]epayment of a loan is not 'unjust' enrichment."  *B.E.L.T., Inc. v. Wachovia Corp.*, 403 F.3d 474, 477 (7th Cir. 2005) (Easterbrook, J.) (no unjust enrichment where debtor repaid certain obligations with money furnished by other creditors); *see United States v. Goforth*, 465 F.3d 730, 734 (6th Cir. 2006) ("[R]epayment by [the debtor] of the $250,000 loan from [a creditor] was simply the fulfillment of a contractual obligation, and it conferred no 'benefit.'"); *Comerica v. Suburban Trust & Sav. Bank*, No. 95-1551, 1996 WL 585888, at *8 (6th Cir. Oct. 10, 1996) (selective repayment of

loans by company that fraudulently pledged same collateral to different lenders did not unjustly enrich the lender who was repaid).

*Third*, BoA was not enriched at Plaintiffs' expense because Plaintiffs received exactly what they bargained for in exchange for their funds—namely, new Ocala notes. The mechanics of alleged intra-day loans by BoA to Ocala, and Ocala's repayment of those alleged loans, are irrelevant to Plaintiffs' economic position. Although Plaintiffs may regret their investment in Ocala notes, they cannot claim that BoA somehow profited at their expense: not only did BoA make no profit, but Plaintiffs received what they paid for. *See In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 543 (D.N.J. 2004) ("The critical inquiry is whether the plaintiff's detriment and the defendant's benefit are related to, and flow from, the challenged conduct.").

## 2.     Plaintiffs Are Not Entitled to the Remedy of a Constructive Trust

"Under New York law, the equitable remedy of a constructive trust is inappropriate absent clear and convincing evidence of (1) a confidential or fiduciary relationship; (2) an express or implied promise; (3) a transfer in reliance on such a promise; and (4) unjust enrichment." *Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc.*, 380 F.3d 624, 646 (2d Cir. 2004).

Plaintiffs' claim for constructive trust—which also is pled in the alternative—suffers from two fatal flaws.

*First*, Plaintiffs have failed to allege that BoA was unjustly enriched, as noted above. "The fourth element is the most important, because 'the purpose of the constructive trust is prevention of unjust enrichment.'" *In re First Cent. Fin. Corp.*, 377 F.3d 209, 212 (2d Cir. 2004) (quoting *Simonds v. Simonds*, 45 N.Y.2d 233 (1978)). As shown above, Plaintiffs cannot meet this element because they received Ocala notes as bargained for.

*Second*, Plaintiffs cannot show a confidential or fiduciary relationship because they were sophisticated financial institutions engaged in an arm's length transaction. *See Barrett v. Freifeld*, 883 N.Y.S.2d 305, 308 (2d Dep't 2010) ("A fiduciary relationship may exist when one

27

party reposes confidence in another and reasonably relies on the other's superior expertise or knowledge, but not in an arm's-length business transaction involving sophisticated business people."); *see also Capital Distributions Servs., Ltd. v. Ducor Exp. Airlines, Inc.*, 440 F. Supp. 2d 195, 209 (E.D.N.Y. 2006) (no confidential or fiduciary relationship where parties "are both independent corporate entities that engaged in an arm's length business transaction"); 106 N.Y. Jur. 2d Trusts § 169 ("The confidential relationship [required for constructive trust] extends not only to the family, but to many others bound by intimacy and trust.  However, no such relationship exists as between two corporations.").

Plaintiffs attempt to plead a "confidential or fiduciary relationship" by reference to BoA's contractual "role as Collateral Agent and/or Indenture Trustee," but their claims are contingent upon those contracts being void and unenforceable.  *See* BNP SAC ¶ 278; DB SAC ¶ 359.[14] The law is clear that, if the contracts are void, they cannot be the source of any such relationship. *See In re Enron Corp.*, No. 01 B 16034 (AJG), 2003 WL 1571719, at *7 (Bankr. S.D.N.Y. Mar. 27, 2003) (holding that void agreements could not be source of equitable interest in property to justify imposition of constructive trust).  Even if that were not the case, the Facility Documents did not create a confidential or fiduciary relationship.  Plaintiffs cite BoA's "role as Collateral Agent" under the Security Agreement,  BNP SAC ¶ 278; DB SAC ¶ 359, but that contract provides that "[t]he relationship between the Collateral Agent and each Secured Party is that of agent and principal *only*, and nothing herein shall be deemed to constitute the Collateral Agent a

---

[14] BNP asserts that a constructive trust may be imposed without a showing of a confidential or fiduciary relationship, *see* BNP SAC ¶ 278, but courts routinely dismiss claims for constructive trust where the parties do not share such a relationship.  *See, e.g., 101 McMurray, LLC v. Porter*, No. 10 Civ. 9037 (CS), 2012 WL 997001, at *14 (S.D.N.Y. Mar. 26, 2012) ("Plaintiff's failure to set forth facts from which the Court can infer that any of the Defendants stood in a confidential or fiduciary capacity with respect to Plaintiff 'is fatal to its claim for a constructive trust.'"); *Pons v. People's Republic of China*, 666 F. Supp. 2d 406, 415 (S.D.N.Y. 2009) (dismissing claim for constructive trust where plaintiff failed to allege confidential or fiduciary relationship with defendant); *Faulkner v. Arista Records LLC*, 602 F. Supp. 2d 470, 484 (S.D.N.Y. 2009) (finding that where no fiduciary relationship existed between the parties plaintiff's "claim for a constructive trust fails as a matter of law").

trustee for any Secured Party or impose on the Collateral Agent any obligations other than those for which express provision is made herein."  St. John Decl., Ex. C, at § 8.01 (emphasis added); *see id.* ("Except as required by the specific terms of this Agreement, the Collateral Agent shall have *no duty (of a fiduciary duty or otherwise)* to exercise any rights, power, remedy or privilege granted to it hereby." (emphasis added)).  And Plaintiffs' reliance on the Indenture also is unavailing because it depends upon promises allegedly made by BoA to TBW in other capacities and under distinct agreements, which cannot be transformed into a broad fiduciary duty to Plaintiffs.  For example, Plaintiffs claim that they relied on BoA's alleged promise "that commercial paper would not issue unless sufficient collateral existed to satisfy the borrowing base condition" (*see* BNP SAC ¶ 280; DB SAC ¶ 361), but that promise was made (if at all) *to TBW* under the Custodial Agreement, the Depositary Agreement, or the Security Agreement. Plaintiffs cannot rely on the Base Indenture—which, in any event, is void by assumption—to create a fiduciary duty that somehow converts promises made under those distinct agreements into a claim for constructive trust.

Finally, as discussed above, Plaintiffs expressly disclaimed the existence of any confidential or fiduciary relationship when they purchased their Ocala notes.  That same theory defeats their unjust enrichment claim here.

### 3.   Plaintiffs' Promissory Estoppel Claims Fail Because They Do Not Cite Any Actionable Promise

"The elements of a cause of action based upon promissory estoppel are a clear and unambiguous promise, reasonable and foreseeable reliance by the party to whom the promise is made, and an injury sustained in reliance on that promise."  *Schwartz v. Miltz*, 909 N.Y.S.2d 729, 731 (2d Dep't 2010).  "The modern doctrine of promissory estoppel may be invoked in two situations":  where there is no "bargained-for consideration," or "where the contract is rendered unenforceable by operation of the Statute of Frauds."  *Merex A.G. v. Fairchild Weston Sys., Inc.*, 29 F.3d 821, 824 (2d Cir. 1994).  Neither situation exists here, even in Plaintiffs' alternative pleading scenario.

In their promissory estoppel claims, Plaintiffs merely incorporate the alleged "promises" that underlie their First, Second, Fourth, and Fifth Causes of Action. *See* BNP SAC ¶ 287; DB SAC ¶ 368. The latter two claims are based upon BoA's alleged failures to sue itself under the Security Agreement and the Base Indenture. Even if such claims were legally possible—and they are not, as shown above—sophisticated investors such as BNP and DB, represented by counsel, could not reasonably have relied on any alleged promise that BoA would sue *itself* on their behalf to recover investment losses caused by a massive fraud at TBW. As a business as well as a legal matter, such a promise would have been absurd. *See Emergent Capital*, 343 F.3d at 195 ("In assessing the reasonableness of a plaintiff's alleged reliance, [courts are] to consider the entire context of the transaction, including factors such as complexity and magnitude, the sophistication of the parties, and the content of any agreements between them."). This claim is yet another attempt to enforce—through promissory estoppel—contracts that Plaintiffs lack standing to enforce, the Custodial and Depositary Agreements. Even if deemed void and unenforceable due to TBW's fraud, those contracts cannot support a claim in favor of Plaintiffs. "[T]hird parties who are not intended beneficiaries of the contract can assert a promissory estoppel argument . . . only . . . in the rarest of situations." *Henneberry v. Sumitomo Corp.*, No. 04 Civ. 2128 (PKL), 2005 WL 991772, at *6 (S.D.N.Y. Apr. 27, 2005).

The former two claims are based upon promises allegedly made by BoA in the Security Agreement and Base Indenture. Plaintiffs' First Cause of Action cites Sections 4.10 and 8.01 of the Security Agreement, which Plaintiffs incorrectly allege make BoA liable for negligence even apart from any contractual breach, and asserts that BoA broke that purported promise not to be negligent by failing to keep accurate records to establish the security interest it held on behalf of Plaintiffs and failing to obtain written confirmation that Colonial Bank had released any security interest it had in mortgages for which BoA had paid. *See* BNP SAC ¶¶ 288-89; DB SAC ¶¶ 255-56. Plaintiffs further allege that BoA breached alleged promises in Sections 5.03(a) & (b) of the Security Agreement by making transfers at Ocala's request for improper purposes, transferring funds when it knew that Ocala was insolvent, not properly segregating mortgages and funds as

30

between the BNP and DB sub-accounts, and acting on requests by TBW employees who were not authorized Issuer agents.  Plaintiffs' Second Cause of Action, in turn, alleges that Ocala's insolvency and material breaches were Events of Default that should have caused BoA to perform additional functions under the Base Indenture.

None of these contract provisions supports a claim for promissory estoppel because they were not promises at all, much less "clear and unambiguous" promises.  *See Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 73 (2d Cir. 1989) (promissory estoppel claim requires evidence of "clear and unambiguous promise"); *U.S. West Fin. Servs., Inc. v. Tollman*, 786 F. Supp. 333, 344 (S.D.N.Y. 1992) ("Regardless of any previous course of dealing and any actions taken in reliance, without a clear and unambiguous promise there is no promissory estoppel.").  Sections 4.01 and 8.01 of the Security Agreement are exculpatory provisions that limit BoA's liability to its "own negligence, fraud, bad faith or willful misconduct."  St. John Decl., Ex. C.  They are not promises by BoA to do anything.  Sections 5.03(a) & (b) of the Security Agreement provide that Ocala "shall . . . instruct" BoA as Collateral Agent to make distributions for certain purposes.  *Id.*  They are not promises by BoA to refuse requests for transfers that BoA "should have known" were unrelated to those purposes.  The parties have litigated at length—and will continue to do so—the proper interpretation of these and other provisions of the Security Agreement and Base Indenture, *see* March 2011 Order, 778 F. Supp. 2d at 394-408, belying any claim that those provisions, even if they could be contorted into promises, were "clear and unambiguous" enough to support a promissory estoppel claim. *See In re Gulf Oil/Cities Service Tender Offer Litig.*, 725 F. Supp. 712, 735 (S.D.N.Y. 1989) (dismissing promissory estoppel claim where alleged promise conflicted with other contract terms).[15]

---

[15] BNP also alleges a separate promissory estoppel claim based upon the March Letter Agreement.  *See* BNP SAC ¶ 305-13.  The Court already has held that purported agreement to be unenforceable.  *See* March 2011 Order, 778 F. Supp. 2d at 411.  The alleged promises in the letter expressly refer to BoA's "performance of its duties under the Depositary Agreement" (BNP SAC ¶ 308), which are not "clear and unambiguous" in that they involve disputed contract

4.      **Plaintiffs Do Not State a Claim for Negligent Performance of an Assumed Duty**

Plaintiffs' last contingent quasi-contract claims are for "negligent performance of an assumed duty."  In their Twelfth Causes of Action, Plaintiffs allege that BoA "undert[ook] to perform professional services, including those described in the Ocala Agreements," and that its performance of those duties "failed to satisfy the standard of care."  DB SAC ¶¶ 373-78.  These claims fail because "New York law does not recognize a cause of action for the negligent performance of a contract."  *RLI Ins.*, 598 F. Supp. 2d at 444; *see Med. Research Assocs., P.C. v. Medcon Fin. Servs., Inc.*, 253 F. Supp. 2d 643, 649 (S.D.N.Y. 2003).  "[A] simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated.  This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract."  *Clark-Fitzpatrick, Inc.*, 70 N.Y.2d at 389 (citations omitted).  Plaintiffs have alleged no such duty and none exists.

Plaintiffs' claims fail for the additional reason that, even if BoA owed duties because it provided professional services to TBW, those duties were owed *to TBW*.  Plaintiffs did not receive those services and were not parties to the contracts under which BoA provided them.  *See* DB SAC ¶ 41 ("In connection with the establishment of Ocala in 2005, BOA pitched its services *to TBW*, and secured the contractual right (and responsibility) to serve several pivotal roles." (emphasis added)).  Under New York law, breach of a contractual duty to render services does not generally give rise to tort liability in favor of a third party.  *See Espinal v. Melville Snow Contractors, Inc.*, 98 N.Y.2d 136 (2002); *Kaehler-Hendrix v. Johnson Controls, Inc.*, 871 N.Y.S.2d 359 (2d Dep't 2009).   There are only three exceptions to that rule:  (1) where the

---

provisions, and which Plaintiffs cannot enforce as third-party beneficiaries, thus precluding a promissory estoppel claim, *see Henneberry*, 2005 WL 991772 at *6.  Moreover, the Court has already ruled that even if the March 2009 letter were enforceable, any first-party indemnification claim brought by BNP against BoA based on that letter must be dismissed on the independent ground that the indemnification language does not extend to first-party claims.  *See* March 2011 Order, 778 F. Supp. 2d at 412 ("Furthermore, even if the BNP Plaintiffs could bring a claim for indemnification under the March 2009 Letter, the language of the indemnification clause is limited to claims brought by third-parties, not claims by the indemnitee against the indemnitor.").

contracting party, in failing to exercise reasonable care in the performance of his duties, "launche[s] a force or instrument of harm;" (2) where the plaintiff detrimentally relies upon the continued performance of the contracting party's duties; and (3) where the contracting party has entirely displaced the other party's duty to maintain a premises safely. *See Espinal*, 98 N.Y.2d at 140 (2002). Plaintiffs plainly cannot invoke the first or third exceptions, and the second exception, like the others, requires *physical* harm. *See Eaves Brooks Costume Co. v. Y.B.H. Realty Corp.*, 76 N.Y.2d 220, 222 (1990) (establishing doctrine of detrimental reliance where sprinkler system malfunctioned and flooded a leased premises); Restatement (Second) Torts § 324A ("One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for *physical harm*." (emphasis added)). Finally, in this policy-driven area of the law, there is no policy reason to strain to recognize an extra-contractual duty owed by BoA to Plaintiffs, where all parties were sophisticated financial entities, represented by counsel, who agreed to govern their relations with a complex contractual scheme. *See Espinal,* 98 N.Y.2d at 139-40 (noting "policy-laden" nature of recognizing duties to non-contracting third parties); *id*. (defining detrimental reliance based upon "policy reasons").

Plaintiffs have not alleged any extra-contractual duty or any exception to the rule that a contractual undertaking to perform services does not create liability in tort to third parties. Therefore, Plaintiffs' claims for negligent performance of an assumed duty should be dismissed.

## IV.  **CONCLUSION**

For the foregoing reasons, the Court should dismiss with prejudice Counts Four through Twelve of BNP's and DB's Second Amended Complaints, and Count Fourteen of BNP's Second Amended Complaint.

Dated:  January 15, 2013                    Respectfully submitted,

                                        By: */s/ Kristin Linsley Myles*

                                            MUNGER, TOLLES & OLSON LLP
                                            Marc T.G. Dworsky
                                            Kristin Linsley Myles
                                            Richard St. John
                                            355 South Grand Avenue, Thirty-Fifth Floor
                                            Los Angeles, CA  90071-1560
                                            (213) 683-9100


                                            *Attorneys for Defendant Bank of America, N.A.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed this 15th day of January, 2013, via this Court's CM/ECF filing system, which gives electronic notice to all parties registered to receive such notice.

By:  */s/ Kristin Linsley Myles*
Kristin Linsley Myles
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA  90071-1560
Tel: (213) 683-9100
Fax: (213) 687-3702
E-mail: kristin.myles@mto.com

*Attorneys for Defendant Bank of America, N.A.*