**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x

BNP PARIBAS MORTGAGE
CORPORATION and BNP PARIBAS,

                         Plaintiff,

       -against-

BANK OF AMERICA, N.A.,

                         Defendant.

                                 Civ. Act. No. 1:09-9783-RWS

------------------------------------------------------------------x
------------------------------------------------------------------x

DEUTSCHE BANK AG,

                         Plaintiff,

       -against-

BANK OF AMERICA, N.A.,

                         Defendant.

                                 Civ. Act. No. 1:09-9784-RWS

------------------------------------------------------------------x
------------------------------------------------------------------x

NATIXIS FINANCIAL PRODUCTS LLC,

                         Plaintiff,

       -against-

BANK OF AMERICA, N.A.,

                         Defendant.

                                 Civ. Act. No. 1:10-3656-RWS

------------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE TO: (1) ADMIT TESTIMONY REGARDING ADVICE OF THIRD PARTY'S COUNSEL; AND (2) EXCLUDE INQUIRY INTO PRIVILEGED COMMUNICATIONS WITH OUTSIDE COUNSEL**

MUNGER, TOLLES & OLSON LLP
Marc T.G. Dworsky
Kristin Linsley Myles
Richard St. John
Gregory J. Weingart
355 South Grand Avenue, Thirty-Fifth Floor
Los Angeles, California 90071-1560
(213) 683-9100
Phone: (213) 683-9100
Fax: (213) 593-2971
E-mail: Gregory.Weingart@mto.com

*Attorneys for Defendant Bank of America, N.A*

- i-

**TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT ...................................................................................1

II. BACKGROUND ............................................................................................................4

III. ARGUMENT..................................................................................................................7

    A. This Court Should Admit Sablich's Testimony That He Followed Advice From A Third-Party's Counsel ..................................................................7

    B. This Court Should Exclude Any Inquiry Into Communications With BoA's Outside Counsel Because They Are Privileged............................................8

    C. BoA's Contractual Reliance Defense Does Not Waive The Privilege Protecting BoA's Communications With Its Outside Counsel...............................9

        1. The Policy Reasons For Waiver of Attorney-Client Privilege Do Not Apply Here Because BoA Is Not Seeking To Use The Privilege As A Sword ...............................................................................9

        2. BoA's Defense Does Not Rely On Its Outside Counsel's Communications And Thus BoA Has Not Waived Attorney-Client Privilege Over Those Communications......................................................10

        3. The Fact That BoA's Contractual Reliance Defense Relies On Advice Of TBW's Counsel Does Not Put At Issue Separate Communications With BoA's Outside Counsel .......................................12

IV. CONCLUSION.............................................................................................................14

## TABLE OF AUTHORITIES

Page (s)

### FEDERAL CASES

*Cruden v. Bank of New York*
    957 F.2d 961 (2d Cir. 1992) .................................................................................. 12

*Fuller v. Interview, Inc.*,
    No. 07 Civ. 5728(RJS)(DF), 2009 WL 3241542 (S.D.N.Y. 2009) ........................... 8

*Gruss v. Zwirn*,
    276 F.R.D. 115 (S.D.N.Y. 2011) ......................................................................... 8, 10

*In re County of Erie*,
    546 F.3d 222 (2d Cir. 2008) ............................................................................ passim

*In re Reserve Fund Sec. & Derivative Litig.*,
    Nos. 09-2011 (PGG) & 09-4346 (PGG), 2012 WL 4774834 (S.D.N.Y. Sept. 12,
    2012) .................................................................................................................. 3, 13

*In re Seagate Tech., LLC*,
    497 F.3d 1360 (Fed. Cir. 2007) .............................................................................. 13

*LNC Investments, Inc. v. First Fidelity Bank, N.A.*,
    No. 92-CIV-7584 (CSH), 2000 WL 1211584 (S.D.N.Y. Aug. 24, 2000) .................. 7

*SEC v. Wyly*,
    No. 10-CIV-5760 (SAS), 2011 WL 3366491 (S.D.N.Y. July 27, 2011) .................... 9

*U.S. v. Construction Products Research, Inc.*,
    73 F.3d 464 (2d Cir. 1996) ....................................................................................... 8

*United States v. Bilzerian*,
    926 F.2d 1285 (2d Cir.1991) .................................................................................... 9

*Weiss v. National Westminster Bank, PLC*,
    Nos. 05-4622 & 07-916, 2008 WL 5115027 (E.D.N.Y. Dec. 3, 2008) ............. 10, 11

### STATE CASES

*Deutsche Bank Trust Co. of Americas v. Tri–Links Investment Trust*,
    837 N.Y.S.2d 15 (N.Y. App. Div. 1st Dep't 2007) ................................................ 11

*Nomura Asset Capital Corp. v. Cadwalader, Wickersham & Taft LLP*,
    880 N.Y.S.2d 617 (N.Y. App. Div. 2009) .............................................................. 11

## TABLE OF AUTHORITIES

**Page (s)**

### FEDERAL RULES

Fed. R. Evid. 402 ................................................................................................................8

Fed. R. Evid. 501 ................................................................................................................8

I.      **PRELIMINARY STATEMENT**

As the Court knows, this matter arises out of the collapse of Ocala Funding, LLC ("Ocala"), a wholly-owned subsidiary of the mortgage originator Taylor, Bean & Whitaker Mortgage Corp. ("TBW"). Plaintiffs were investors in the commercial paper issued by Ocala. Defendant Bank of America, N.A. ("BoA") served a number of ministerial, back office functions for Ocala, including as indenture trustee and depositary.

By this motion in limine, BoA respectfully requests the Court rule that evidence of legal advice BoA received from TBW's counsel about how the borrowing base certificate included as Exhibit C to the Ocala Depositary Agreement should be completed is admissible. Exhibit C was a document that Ocala was required to complete and furnish to BoA prior to the issuance of any commercial paper, and BoA in turn was required to review and certify certain items on that certificate. Plaintiffs have alleged that, in breach of its legal obligations, BoA improperly certified certain Exhibit Cs. *See, e.g.*, BNP Paribas Second Amended Complaint ("BNPP SAC") ¶¶ 63, 149-151; Deutsche Bank Second Amended Complaint ("DB SAC") ¶¶ 88, 93, 110. The evidence shows, however, that before certifying the Exhibit Cs BoA had sought, and obtained, specific guidance from the counsel that drafted the facility documents as to how these certificates were supposed to be completed. Each of the contracts governing the Ocala facility contained so-called "reliance provisions" that expressly permitted BoA to rely on such advice in performing its duties, and provide that BoA cannot be liable when it takes action pursuant to such advice.[1]

---

[1] These "reliance provisions" include both provisions specifically permitting BoA to rely on advice of counsel (for example, "The Depositary may consult with counsel, and the advice of such counsel or any opinion of counsel as to matters of law shall be full and complete authorization and protection . . . .") and provisions generally permitting BoA to rely on any third-party, whether or not that third party was a lawyer (for example, "The Depositary may conclusively rely, as to the truth of the statements and correctness of the opinions expressed (footnote continued)

As this evidence demonstrates that BoA solicited, received and followed advice from counsel, and therefore under the reliance provisions is not liable for alleged breaches based on actions taken pursuant to that advice, the evidence is admissible.

In addition, this motion seeks to limit testimony to *only* the non-privileged advice BoA received from TBW's counsel and bar inquiry into any privileged communications BoA had with its own outside counsel. Peter Sablich, the BoA employee who received the non-privileged advice provided by TBW's counsel regarding Exhibit C, was also made aware of privileged communications from BoA's outside counsel regarding the same topic. However, BoA does not intend to rely upon these privileged communications in establishing its contractual defense based on these reliance provisions -- BoA intends to rely only on the non-privileged advice from TBW's counsel. Because BoA's reliance defense does not rely on BoA's privileged communications with its own counsel, the privilege has not been and will not be waived. *See In re County of Erie*, 546 F.3d 222, 229 (2d Cir. 2008).

This motion is necessitated by Plaintiffs' failure to respond meaningfully to BoA's multiple attempts to address this admissibility issue. BoA previously alerted Plaintiffs that its reliance defense would rely solely on the non-privileged advice BoA received from TBW's counsel, and not on any privileged advice BoA may have received from its own counsel, and that BoA's communications with its own counsel therefore remain privileged. Weingart Decl. Ex. A (Dec. 19, 2012 letter from Gregory J. Weingart). BoA further explained that if Plaintiffs disagreed and thought that the privileged advice from BoA's counsel had been put at issue, they were required to take action prior to the close of discovery by way of a motion to compel or

---

therein, upon certificates, opinions or other evidence furnished to the Depositary by or on behalf of any party hereto."). Weingart Decl., Ex. G (Depositary Agreement) §§ 11(h), 11(c).

- 2-

otherwise. *Id.* Plaintiffs eventually responded over one month later with a cryptic, two-sentence letter stating that they disagreed but failing to provide any basis for that disagreement. Weingart Decl. Ex. B (Jan. 22, 2013, letter from Stephen Sorensen). Plaintiffs then sent an additional letter on February 28, 2013 essentially asking if BoA's position remained the same. Weingart Decl. Ex. K (Feb. 28, 2013 letter from Stephen Sorensen). BoA responded to that letter last week, reiterating the points in its December 19, 2012 letter, to which Plaintiffs again did not respond. Weingart Decl. Ex. N (Mar. 8, 2013, letter from Gregory J. Weingart). Plaintiffs to date have refused to articulate their position or respond substantively to the legal authority relied upon by BoA. In short, despite being aware of this issue for several months, Plaintiffs have failed to take any action other than continuing to reserve their rights.

Plaintiffs' inaction suggests that they are waiting for discovery to close, and will then argue that BoA's failure to produce its privileged communications with outside counsel precludes BoA from relying on its contractual reliance defense. Of course, such an argument would be procedurally improper, as Plaintiffs must raise any assertion by Plaintiffs that BoA has waived attorney-client privilege by asserting its reliance defense *during discovery*. *See In re Reserve Fund Sec. & Derivative Litig.*, Nos. 09-2011 (PGG) & 09-4346 (PGG), 2012 WL 4774834, at *1, *3 (S.D.N.Y. Sept. 12, 2012).

Nonetheless, BoA hereby requests the Court resolve this issue before discovery closes to avoid any future dispute concerning either BoA's privileged communications with outside counsel, or BoA's ability to raise its contractual reliance defense. BoA recognizes that the Court typically does not hear motions in limine until after the close of discovery. However, Plaintiffs' procedural gamesmanship requires that the Court address this issue before the discovery cut-off, so that Plaintiffs may not seek to profit by delaying the addressing of this issue until after

discovery has closed, and then arguing that Plaintiffs were improperly foreclosed from discovery into legal advice as to which BoA has properly asserted privilege.  This Court should rule admissible testimony about advice that BoA received from TBW's counsel regarding the construction of Exhibit C.  This Court should also limit testimony at trial to *only* the advice from this third-party's counsel and bar inquiry into any privileged communications BoA may have had with its own outside counsel.

Alternatively, if this Court concludes that BoA's reliance on advice from a third-party's counsel for BoA's contractual reliance defense results in waiver of BoA's attorney-client privilege over advice from BoA's outside counsel, the Court should not bar admission of advice from BoA's outside counsel, but instead allow Plaintiffs to conduct limited discovery into the advice about Exhibit C that BoA received from its own outside counsel.

## II.     BACKGROUND

Plaintiffs seek to recover from BoA their investment losses in Ocala, which was a wholly-owned subsidiary of TBW.  As the Court is aware, TBW was engaged in a fraudulent scheme that was exposed in 2009 by the implosion of the real estate "bubble."  BoA performed limited functions for Ocala and knew nothing of the fraud, but it has been the target of Plaintiffs' claims because it is the only non-government entity left standing.

Peter Sablich, a BoA employee, was the original transaction manager responsible for administration of certain tasks BoA undertook pursuant to the Ocala facility documents.  One of those tasks involved certifying Exhibit C to the Depositary Agreement, which needed to be completed and signed by TBW and reviewed and signed by BoA prior to the issuance of any commercial paper.  Exhibit C contained a formula to determine Ocala's borrowing base.  That formula provided that, when commercial paper was to be issued, Line M of the Exhibit C (which represented certain Ocala liabilities) had to be less than or equal to the sum of Lines N + O + P +

Q of the Exhibit C (which represented certain Ocala assets).  If Line M, as shown on the certificate, was less than the sum of Lines N + O + P + Q, Sablich would sign the form on behalf of BoA, and Sablich would forward the completed form to those responsible for issuing commercial paper.  If Line M, as shown on the certificate, was greater than the sum of Lines N + O + P + Q, commercial paper could not be issued.

     A few weeks after the Ocala commercial paper facility started, as the parties were still working through some operational issues, questions arose about what should be included in Line M of Exhibit C.  As the facility began, commercial paper to be issued following the execution of the Exhibit C was not included in Line M of the Exhibit C (it was not yet a liability of the facility, nor had cash yet been received in return for it).  Commercial paper that was outstanding as of the time the Exhibit C was executed (whether it matured on the day of the Exhibit C, or at a later date) had been included in Line M.  ███████████████████████

███████████████████████████████████████████

███████████████████████████ Weingart Decl. Ex. C (Sablich Depo. Ex. 22).  Cadwalader was the primary drafter of the facility documents, including the Depositary Agreement and its Exhibit C, and was a logical choice to provide interpretive guidance. ███

███████████████████████████████████

███████████████████████████████████████

███████████████████ Weingart Decl. Ex. D (Sablich Depo. Ex. 23).

███████████████████████████████

███████ Weingart Decl. Ex. E (Sablich Depo. Vol. I) at 321:10-14.  Sablich thereafter followed this advice when preparing Exhibit C and applying the formula -- excluding from Line

M the value of the commercial paper maturing on the date of the Exhibit C.  This method of preparing Exhibit C was followed by later transaction managers as well.

Around the same time he received this advice from Cadwalader, Sablich raised the issue of the Exhibit C calculations with a supervisor.  That supervisor spoke with Patrick Hayden ("Hayden"), an attorney at BoA's outside counsel Kennedy & Covington, about this issue and reported that discussion to Sablich. ███████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████ Weingart Decl. Ex. E (Sablich Depo. Vol. I) at 272-73, 325; Ex. F (Sablich Depo. Vol. II) at 473-74, and 492-93.

Plaintiffs have alleged that BoA should not have certified the Exhibit Cs because the Exhibit Cs excluded commercial paper maturing on the date the Exhibit C was executed, and as a result Line M understated Ocala's liabilities.  *See, e.g.*, BNPP SAC ¶¶ 63, 149-151; DB SAC ¶¶ 88, 93, 110.  In excluding that maturing commercial paper from Line M, however, BoA was entitled to, and properly did, rely on the advice set forth in the June 30, 2005 email from Cadwalader, the primary drafter of the facility documents.  The method followed by BoA in reviewing and certifying the Exhibit C was followed not only for Exhibit Cs prepared for the entire facility, but also for investor-specific Exhibit Cs that were sent directly to Plaintiffs beginning in 2009.  *See, e.g.*, Weingart Decl., Ex. L (Feb. 20, 2009, email to DB attaching Exhibit C); Ex. M (Feb. 20, 2009, email to BNPP attaching Exhibit C).  Although Plaintiffs now complain these Exhibit Cs were improperly prepared because, in part, the Line M amount excluded commercial paper, neither Deutsche Bank nor BNP Paribas ever raised a concern with

20211942.3

BoA about how the form was being prepared when they were receiving Exhibit Cs whose Line M clearly excluded any commercial paper maturing on the date of the Exhibit C from Line M.

Multiple provisions of the facility documents bar liability where BoA relies on others, including when it receives advice from counsel (including counsel to other parties, rather than its own counsel). *See, e.g.,* Weingart Decl., Ex. G (Depositary Agreement) §§ 11(c), (e), (h), (i); Ex. H (Base Indenture) §§ 10.1(b)(ii), 10.2(a), (b), (f); Ex. I (Custodial Agreement) §§ 19(b), (d), (i), (o); Ex. J (Security Agreement) § 8.01. The advice BoA received from TBW's counsel accordingly protects BoA from claims based on actions it took in reliance on advice from TBW's counsel.

### III.   ARGUMENT

Sablich's testimony and the related emails regarding legal advice from TBW's counsel forwarded to him should be admitted because they are relevant to BoA's contractual reliance defense and are the *only* advice of counsel upon which that defense relies. Any argument that BoA has waived the attorney-client privilege protecting Sablich's separate communication with BoA's outside counsel, or gives up its contractual reliance defense by asserting that privilege, is misplaced. BoA is entitled to advance its contractual reliance defense *and* protect its own privileged communications because the former relies entirely on advice from a third-party's counsel, and the latter is not being relied upon by BoA for this defense.

**A.   This Court Should Admit Sablich's Testimony That He Followed Advice From A Third-Party's Counsel**

A contractual reliance defense allows a party to contract out of liability where the party has followed the advice of others, including counsel. *See LNC Investments, Inc. v. First Fidelity Bank, N.A.*, No. 92-CIV-7584 (CSH), 2000 WL 1211584, at *4 (S.D.N.Y. Aug. 24, 2000) (explaining that a contractual reliance defense is "absolute" and distinguishing it from the

"common law" advice-of-counsel defense).  Here, the Ocala facility documents contain numerous provisions that protect BoA from liability when it relied on the Cadwalader advice forwarded to it.  *See, e.g.,* Weingart Decl., Ex. G (Depositary Agreement)  §§ 11(c), (e), (h), (i); Ex. H (Base Indenture) §§ 10.1(b)(ii), 10.2(a), (b), (f); Ex. I (Custodial Agreement) §§ 19(b), (d), (i), (o); Ex. J (Security Agreement) § 8.01.

Sablich's testimony that he followed the advice from TBW's counsel Cadwalader, as well as the email containing that advice forwarded to Sablich and others at BoA, are relevant to BoA's contractual reliance defense and thus should be admitted.  *See* Fed. R. Evid. 402.

**B.**     **This Court Should Exclude Any Inquiry Into Communications With BoA's Outside Counsel Because They Are Privileged**

Whereas Sablich's testimony about the advice from TBW's counsel is relevant and should be admitted, all communications between BoA and its outside counsel remain privileged. Communications with BoA's own counsel are protected by attorney-client privilege because they are "(1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) [was] made for the purpose of obtaining or providing legal advice."  *See* (1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice."  *U.S. v. Construction Products Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996); *Fuller v. Interview, Inc.*, No. 07 Civ. 5728(RJS)(DF), 2009 WL 3241542, *1 (S.D.N.Y. 2009) (attorney-client privilege protects "communications between … employees of [defendant] and their outside … counsel");  *see generally* Weingart Decl. Ex. F (Sablich Depo. Vol. II) at 458:14-

23 ███████████████████████████████████████   473-74 ███████████████████████

███████████████████████████████████████████████

C. **BoA's Contractual Reliance Defense Does Not Waive The Privilege Protecting BoA's Communications With Its Outside Counsel**

Although invoking a contractual reliance defense based on advice received from counsel may waive any attorney-client privilege on the communications on which the defense *relies*, no such waiver exists here because BoA's contractual reliance defense relies only on non-privileged communications received from TBW's counsel. The privilege waiver that typically accompanies advice of counsel defenses is therefore inapposite.

1. **The Policy Reasons For Waiver of Attorney-Client Privilege Do Not Apply Here Because BoA Is Not Seeking To Use The Privilege As A Sword**

The attorney-client privilege "encourage[s] full and frank communication between attorneys and their clients and thereby promote[s] broader public interests in the observance of law and the administration of justice." *Erie*, 546 F.3d at 228 (internal quotation marks and citation omitted). Because of the importance of the privilege, "rules which result in the waiver of this privilege and thus possess the potential to weaken attorney-client trust, should be formulated with caution." *Id.*

Although not the case here, the privilege may be waived where a party's contractual reliance defense relies on privileged advice from counsel; in such a situation, the party "cannot use the [attorney-client] privilege to prevent inquiry into the communications that the client and lawyer had about that advice." *SEC v. Wyly*, No. 10-CIV-5760 (SAS), 2011 WL 3366491, at *2

---

[2] "[T]he presence (or absence) of the attorney-client privilege in this action will be determined by reference to New York law, since this court's jurisdiction is premised on diversity of citizenship between the parties." *Gruss v. Zwirn*, 276 F.R.D. 115, 124 (S.D.N.Y. 2011); Fed. R. Evid. 501; BNP SAC ¶ 30 (pleading diversity jurisdiction); DB SAC ¶ 37 (same).

(S.D.N.Y. July 27, 2011) (citing *United States v. Bilzerian*, 926 F.2d 1285 (2d Cir.1991)). Waiver is designed to prevent parties from using privilege both as a shield to protect communications with their attorneys and as a sword in the form of an affirmative contractual reliance defense. *See generally United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) ("[T]he attorney-client privilege cannot at once be used as a shield and a sword.") (citations omitted).

The fairness considerations underpinning waiver do not apply here because BoA's contractual reliance defense relies solely on non-privileged advice BoA received from TBW's counsel. BoA does not contend that the advice it received from TBW's counsel is privileged and thus does not seek to shield this advice from discovery -- indeed, that advice has been produced and is available to all parties. Accordingly, BoA is not using the advice at issue as a sword while trying to shield it from discovery. BoA only seeks to protect separate privileged communications with its outside counsel that BoA is not invoking for its contractual reliance defense. Thus, no practical reason exists here to justify waiver.

    **2.**    **Boa's Defense Does Not Rely On Its Outside Counsel's Communications And Thus BoA Has Not Waived Attorney-Client Privilege Over Those Communications**

The Second Circuit has clarified that a party does not trigger "at-issue waiver" of attorney-client privilege unless that party "*rel[ies]* on privileged advice from his counsel to make his claim or defense." *Erie*, 546 F.3d at 229 (emphasis in original); *see Gruss v. Zwirn*, 276 F.R.D. 115, 133, 136 (S.D.N.Y. 2011) (at-issue waiver "will be found only when a defense requiring reliance on the advice of counsel is itself to be proven by the use of privileged documents."). A party's "reliance on privileged advice in the assertion of the claim or defense" is an "essential element" of at-issue waiver of the privilege over that advice. *Erie*, 546 F.3d at 229. Moreover, "there must be 'some *showing* by the party arguing for a waiver that the

opposing party relies on the privileged communication as a claim or defense or as an element of a claim or defense.'" *Weiss v. National Westminster Bank, PLC*, Nos. 05-4622 (CPS) & 07-916 (CPS)(MDG), 2008 WL 5115027, at *2 (E.D.N.Y. Dec. 3, 2008) (quoting *Erie*, 546 F.3d at 228) (emphasis added).

Plaintiffs cannot show that BoA's contractual reliance defense relies on privileged communications with its outside counsel because BoA does not intend to (nor does it need to) use those communications to support its defense. New York courts consistently hold that no waiver of attorney-client privilege occurs where a party specifically states that it will not use privileged communications to prove a defense. *See Nomura Asset Capital Corp. v. Cadwalader, Wickersham & Taft LLP*, 880 N.Y.S.2d 617, 619 (N.Y. App. Div. 2009) (finding no waiver where "plaintiff disavows any intention to use [privileged] communications and defendant fails to show that any such communications are necessary to either plaintiff's claim or defense"); *Deutsche Bank Trust Co. of Americas v. Tri–Links Investment Trust*, 837 N.Y.S.2d 15, 24 (N.Y. App. Div. 1st Dep't 2007) (finding no at-issue waiver where "[plaintiff] forthrightly states that it will not use privileged material or attorney work-product to establish the reasonableness of its defense").

Furthermore, even if BoA's privileged communications with its outside counsel were *relevant* to BoA's contractual reliance defense, no waiver of the privilege would exist because BoA does not *rely* on those communications to make its advice-of-counsel defense. A party's defense does not "rely" on privileged material merely because the privileged material is relevant, as such an exception would swallow the rule. Indeed "privileged information may be in some sense relevant in *any* lawsuit." *See Erie*, 546 F.3d at 229 (rejecting line of cases holding that at-issue waiver was triggered whenever a party's defense rendered the privileged communication

"relevant to the case"); *Weiss*, 2008 WL 5115027 at *2 (denying plaintiffs' motion to compel because defendants' advice-of-counsel defense did not waive attorney-client privilege given that plaintiffs merely established that privileged documents were relevant, whereas *Erie* dictates that "relevance cannot serve as proxy for the requisite showing of a party's reliance 'on privileged advice from his counsel [in] mak[ing][a] … defense'").

      **3.**      **The Fact That BoA's Contractual Reliance Defense Relies On Advice of TBW's Counsel Does Not Put At Issue Separate Communications With BoA's Outside Counsel**

The Second Circuit has held that a defendant's use of one counsel's advice to establish contractual reliance defense does not waive privilege over another counsel's advice. In *Cruden v. Bank of New York*, the Second Circuit upheld an order that limited discovery to *only* the counsel's advice upon which defendants relied for establishing their reliance defense and barred discovery of advice from other counsel about the same subject. 957 F.2d 961 (2d Cir. 1992). Like the present case, the plaintiffs in *Cruden* were noteholders who sued the defendants, indenture trustees, alleging that the defendants breached the indentures. *Id.* at 963-965. The district court granted summary judgment to the defendants based on their defense that they "reli[ed] on opinions of counsel," namely, one of their retained counsel. *Id.* at 972. On appeal, the plaintiffs contended that the district court erred by denying them discovery on advice provided by *other* counsel, namely, other "in-house and retained counsel" for defendants. *Id.* Plaintiffs argued that such discovery would have allowed them to "ascertain whether [defendants] reasonably relied in good faith on the Simpson, Thacher opinions." *Id.* The Second Circuit rejected plaintiffs' argument because defendant's invocation of the reliance defense "waived the privilege regarding only the advice of Simpson Thacher, upon which the [defendants] claimed reliance." *Id.*

- 12-

The situation here is similar to the one in *Cruden*. As in *Cruden*, BoA seeks to limit testimony at trial to *only* the counsel's advice upon which BoA bases its reliance defense and bar inquiry into advice from other counsel about the same subject. As in *Cruden*, plaintiffs contend that BoA breached an indenture and other agreements and BoA has responded by invoking a reliance defense based on advice of counsel. As in *Cruden*, this defense relies on the advice of only *one* counsel, and thus Plaintiffs are not entitled to discovery of privileged communications with *other* counsel on which BoA has not "claimed reliance." *See id.*

Furthermore, the few other courts to address this issue also held that a party does not waive attorney-client privilege over communications with *one* counsel simply because that party's defense also sought *another* counsel's advice. *See In re Reserve Fund Sec. & Derivative Litig.*, Nos. 09-2011 & 09-4346, 2012 WL 4774834, at *1-3 (S.D.N.Y. Sept. 12, 2012) (holding that defendant did not waive privilege over advice received from its own outside counsel (Kelley Drye), because defendant's reliance defense did not "rely on any advice provided by Kelley Drye," but rather upon advice provided by other counsel, namely, in-house counsel and another outside law firm); *In re Seagate Tech., LLC*, 497 F.3d 1360, 1374-75 (Fed. Cir. 2007) (holding that party's assertion of "advice of counsel defense and disclosing opinions of opinion counsel," which result in waiver as to that counsel's opinion, "do not constitute waiver of the attorney-client privilege for communications" with other counsel about that same opinion).

In sum, BoA was entitled to rely on the non-privileged advice of TBW's counsel, this non-privileged advice forms the basis of BoA's various reliance defenses under the Ocala agreements, and this reliance does not waive the attorney-client privilege on any other advice BoA may have received from its own counsel. Of the two sources of legal advice that Sablich received, one is privileged (BoA's communications with its outside counsel) and one is not (the

- 13-

advice from TBW's counsel Cadwalader). BoA is only asserting its reliance defense based on the non-privileged advice it received from TBW's counsel and so the attorney-client privilege over any other, privileged advice BoA may have received must be preserved. This attorney-client privilege, is, after all, "one of the oldest recognized privileges for confidential communications." *Erie*, 546 F.3d at 228 (internal quotation marks and citation omitted).

### IV.   CONCLUSION

For the forgoing reasons, this Court should rule admissible testimony about advice that BoA received from TBW's counsel regarding the construction of Exhibit C. This Court should also limit testimony at trial to *only* the advice from this third-party's counsel and bar inquiry into any privileged communications BoA may have had with its own outside counsel. Permitting BoA to advance its contractual reliance defense based on non-privilege advice from TBW's counsel *and* protect its separate privileged communications with its own counsel is appropriate because BoA's reliance defense relies solely on non-privileged advice from counsel to another deal party, and does not rely on any privileged advice BoA may have received from its own *outside* counsel.

Alternatively, if this Court concludes that BoA's reliance on advice from a third-party's counsel for BoA's contractual reliance defense results in waiver of BoA's attorney-client privilege over advice from BoA's outside counsel, BoA requests that the Court not bar admission of advice from the third-party's counsel, but instead allow Plaintiffs to conduct limited discovery into the advice about Exhibit C that BoA received from its own outside counsel.

- 15-

Dated:  March 15, 2013 Respectfully submitted,

By:   */s/ Gregory J. Weingart*
    Gregory J. Weingart

    Marc T.G. Dworsky
    Kristin Linsley Myles
    Richard St. John
    MUNGER, TOLLES & OLSON LLP
    355 South Grand Avenue, Thirty-Fifth Floor
    Los Angeles, CA  90071-1560
    Phone: (213) 683-9100
    Fax: (213) 593-2971
    E-mail: Gregory.Weingart@mto.com
    *Attorney for Defendant Bank of America, N.A.*