UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

BNP PARIBAS MORTGAGE
CORPORATION and BNP PARIBAS,

                    Plaintiffs,                    09 Civ. 9783 (RWS)

        - against -                                OPINION

BANK OF AMERICA, N.A.,

                    Defendant.

------------------------------------X

DEUTSCHE BANK AG,

                    Plaintiff,

                                                   09 Civ. 9784 (RWS)
        - against -
                                                   OPINION

BANK OF AMERICA, N.A.,

                    Defendant.

------------------------------------X

A P P E A R A N C E S:


        Attorneys for Plaintiffs BNP Paribas
        Mortgage Corporation and BNP Paribas

        BOIES SCHILLER & FLEXNER LLP
        333 Main Street
        Armonk, NY  10504
        By:  Robin A. Henry, Esq.
             Motty Shulman, Esq.
             Jack Wilson, Esq.

Attorneys for Plaintiff Deutsche Bank AG

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
By:  William E. McDaniels, Esq.
     Stephen D. Andrews, Esq.
     Stephen P. Sorensen, Esq.
     Daniel M. Dockery, Esq.
     Katherine O'Connor, Esq.


Attorneys for Defendant Bank of America, N.A.

MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA  90071-1560
By:  Marc T.G. Dworsky, Esq.
     Kristin Linsley Myles, Esq.
     Gregory Weingart, Esq.
     Richard St. John, Esq.

KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY  10036
By:  Richard T. Marooney, Esq.

**Sweet**, D.J.

Plaintiffs' BNP Paribas Mortgage Corporation ("BNPP") and Deutsche Bank AG ("DB") (together, "Plaintiffs") move for joint leave to supplement and amend their Second Amended Complaints ("BNP SAC" and "DB SAC") (collectively, the "SACs") pursuant to Federal R. Civ. P. 15(a)(2) and 15(d).  For the reasons set forth below, the motion is denied.


## Prior Proceedings

The Plaintiffs initiated these actions against BoA on November 25, 2009, and each filed Amended Complaints on March 17, 2010.[1]  On April 30, 2010, BoA moved to dismiss the FACs and on March 23, 2011, this Court issued its ruling on BoA's motion in *BNP Paribas Mortg. Corp. v. Bank of America, N.A.*, 778 F. Supp. 2d 375 (S.D.N.Y. 2011) (the "March 23 Opinion").  The decision dismissed (1) Plaintiffs' contract claims for lack of standing under the Depositary Agreement, the Custodial Agreement and the March 2009 Letter; (2) Plaintiffs' indemnification

---

[1] Hereafter, the Amended Complaint filed by DB will be referred to as the "DB AC" and the Amended Complaint filed by BNP in its contracts case will be referred to as the "BNP AC" (collectively, "Plaintiffs' FACs").

claims; and (3) all claims relating to Ocala Notes issued prior
to July 20, 2009.  The decision upheld all remaining claims.


On August 30, 2010, the Plaintiffs filed new actions
against BoA in the Southern District of Florida, asserting
claims for conversion of Ocala's assets and seeking to recover
for their investment losses on their unpaid Ocala notes.
*Deutsche Bank AG v. Bank of America* ("Deutsche II"), S.D. Fla.
Civil Action No. 10-23124 and *BNP Paribas Mortg. Corp. v. Bank
of America* ("BNP II"), S.D. Fla. Civil Action No. 10-23115
(collectively, the "Conversion Actions").  On November 17, 2010,
the actions were transferred to the Southern District of New
York and referred to this Court.  On August 30, 2011, this Court
dismissed Plaintiffs' conversion claims.  *BNP Paribas Mortg.
Corp. v. Bank of America, N.A.*, Nos. 10-8630 and 10-8299, 2011
WL 3847376 (S.D.N.Y. Aug. 30, 2011) (the "August 30 Opinion").


On July 6, 2011, Plaintiffs made a formal demand by
letter on BoA, as Indenture Trustee and Collateral Agent, to
pursue claims against the Depositary, Custodian and Collateral
Agent for breaches of the corresponding Depositary, Custodial

3

and Security Agreements.  On August 6, 2011, BoA refused

Plaintiffs' demands.


On June 22, 2011, BoA filed its Complaint against

third party defendant BNP Paribas Securities Corporation

("BNPPS") and third party defendant Deutsche Bank Securities,

Inc. ("DBS") (collectively, the "Note Dealers" or the "Third

Party Defendants"), and motions to dismiss were heard and marked

fully submitted on January 25, 2012.  On December 29, 2011,

Plaintiffs filed a motion to amend, which was heard and marked

fully submitted on April 4, 2012.  On June 5, 2012, this Court

issued its ruling on BoA's Complaint against the Third Party

Defendants and Plaintiffs' Motion to Amend in *BNP Paribas Mortg.*

*Corp. v. Bank of America, N.A.*, 866 F.Supp.2d 257 (S.D.N.Y.

2012) (the "June 6 Opinion").  The decision dismissed BoA's

Complaint in its entirety and granted Plaintiffs' motion to

amend and file the Second Amended Complaint.


Plaintiffs filed their SACs on October 1, 2012,

reasserting their initial surviving claims and adding

allegations of (1) BoA failing to "sue itself" or assign its

claims; (2) negligence and negligent misrepresentation; and (3)

4

contingent quasi-contract claims.  On January 15, 2013, BoA
filed a motion to dismiss counts four through twelve of the
Plaintiffs' SACs and BNP's Fourteenth Cause of Action.  BoA's
motion to dismiss was granted in its entirety in *BNP Paribas
Mortg. Corp. v. Bank of America, N.A.*, 2013 WL 2452169 (S.D.N.Y.
June 6, 2013) (the "June 6 Opinion").


On July 8, 2013, Plaintiffs filed the instant motion
for joint leave to supplement and amend their SACs.  This motion
was heard and marked fully submitted on October 2, 2013.


**Facts**

The transaction giving rise to this action was alleged
in the initial complaint and described in the June 6 Opinion.
Plaintiffs' motion to file the Third Amended Complaints ("TACs")
principally relates to the terms of a May 23, 2013 assignment,
under which BoA, as Indenture Trustee, assigned claims to BNPP
and DB in exchange for Plaintiffs' agreement not to appoint a
successor Indenture Trustee.

5

On April 8, 2013, Plaintiffs notified BoA that, pursuant to Section 10.6(b) of the Base Indenture, BoA was removed as Indenture Trustee, pending appointment of a new Indenture Trustee. (Affidavit of Nathan Holcomb, July 8, 2013 ("Holcomb Aff."); Ex. D (April 8, 2013 Notice of Removal of Bank of America as Indenture Trustee for Ocala Funding).) On May 23, 2013, BoA, as Indenture Trustee, assigned "all of the Indenture Trustee's right, title, and interest in and to" any claims or potential claims "that the Indenture Trustee may have under the Depositary Agreement and/or the Custodial Agreement against BoA for alleged breaches of any duties and obligations under the Depositary Agreement and/or the Custodial Agreement" to Plaintiffs. (Holcomb Aff. Ex. C ¶ 1 (May 23, 2013 Limited Assignment/Transfer Agreement among BoA, BNP Paribas Mortgage Corp. and DB) (the "Assignment Agreement").) The Assignment Agreement mandated that these assigned claims be pursued by the Noteholders only in this Court and only by way of amendment of the existing pleadings. (*Id.* (assigning "all of the Indenture Trustee's right, title and interest in and to the Claims, provided, however, that the Investors acknowledge and agree that, to the extent the Investors intend to assert the Claims, such claims shall be asserted solely and exclusively in the New York Actions by way of a motion seeking leave to amend and/or

6

supplement the complaints. . .").) Plaintiffs contend that pursuant to this agreement, they have standing to assert claims under the Depositary Agreement against BoA, and seek to file their TACs to assert these newly acquired claims.


**The Applicable Standard**

Under Rule 15(a), "leave to amend 'shall be freely given when justice so requires,' [but] it is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir. 2007) (quoting Fed. R. Civ. P. 15(a)); *see also Williams v. Citigroup Inc.,* 659 F.3d 208, 212-13 (2d Cir. 2011) (citing *New York v. Green,* 420 F.3d 99, 104 (2d Cir. 2005)) (the standard governing motions to amend is a "permissive" one that is informed by a "strong preference for resolving disputes on the merits."). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Williams,* 659 F.3d at 213 (quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

7

However, "[a] district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir. 2007).  An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6). *Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir. 1991); *see also AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.,* 626 F.3d 699, 726 (2d Cir. 2010) ("Leave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact.").  Other factors that may be considered include the length of the delay, the judicial and party resources that have been expended, and any tactical behavior evident in the plaintiff's request for leave to amend. *See generally McCarthy v. Dun & Bradstreet,* 482 F.3d 184, 200–01 (2d Cir. 2007); *State Trading Corp. of India v. Assuranceforeningen Skuld,* 921 F.2d 409, 418 (2d Cir. 1990).

## I. Amendment Would be Futile

"[A] request to replead should be denied in the event that amendment would be futile." *Absolute Activist Master Fund*

8

*Ltd. v. Ficeto*, 677 F.3d 60, 71 (2d Cir. 2012); *see also Oneida Indian Nation of N.Y. v. City of Sherrill*, 337 F.3d 139, 168 (2d Cir. 2003) ("[A]mendment is not warranted in the case of, among other things, 'futility.'") (internal citations omitted), *rev'd on other grounds*, 544 U.S. 197 (2005); *Gianstasio v. D'Agostino*, 862 F. Supp. 2d 343, 351 (S.D.N.Y. 2012). "A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Oneida Indian Nation*, 337 F.3d at 168; *see also Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990) ("[W]here [] there is no merit in the prorposed amendments, leave to amend should be denied."); *see also E\*Trade Fin. Corp. v. Deutsche Bank AG*, 420 F. Supp. 2d 273, 282 (S.D.N.Y. 2006) ("An amendment is considered futile if the amended pleading fails to state a claim or would be subject to a successful motion to dismiss on some other basis.").


      Plaintiffs seek to supplement and amend their SACs to bring claims under the Depositary Agreement.  Two prior opinions have rejected Plaintiffs' attempt to bring such claims: First, the March 23 Opinion held that Plaintiffs were not intended beneficiaries of the Depositary Agreement and lacked standing to enforce it, *see* March 23 Opinion at 408-11, and second, the June 6 Opinion dismissed the Depositary claims from the SACs, holding

that a party cannot bring an adversarial claim against itself (i.e. that BoA as indenture trustee of the Depositary Agreement could not be required to sue itself).  *See* June 6 Opinion at *6-7.  Now, Plaintiffs seek to bring the same allegations not through derivative standing or by forcing BoA to sue itself, but as assignees of BoA's Indenture Trustee claims.


"It is elementary ancient law that an assignee never stands in any better position than his assignor." *See Matter of International Ribbon Mills*, 36 N.Y.2d 121, 126 (1975); *see also* New York & Presbyt. Hosp. v Country-Wide Ins. Co. 934 N.Y.S.2d 54 (2011) (an assignee can acquire "no greater rights" than those of his assignor).  There are two established exceptions to this rule: (a) assigning a claim can create diversity jurisdiction that did not otherwise exist, *see* Deajess Med. Imaging v. Allstate Ins. Co., 344 F. Supp. 2d 907, 910-11 (S.D.N.Y. 2004), and (b) New York law has allowed assignments of claims by corporations to individuals to bypass N.Y. C.P.K.R. § 321(a), which bars corporations from appearing *pro se*. *See Kinlay v. Henley*, 868 N.Y.S.2d 62, 63 (N.Y. App. Div. 2008).

10

Neither exception is applicable to the instant motion. Assignment was used in both narrow line of cases to avoid jurisdictional and procedural bars, not to cure a failure to state a claim. As Plaintiffs acknowledge, each line of cases involves an "impediment [that] is independent of the merits." (*See* Plaintiffs' Motion to Supplement; "Pl. Mot."; at 12.) In contrast, no New York case or any other in this circuit has allowed assignments to cure a claim dismissed on the merits, or in particular to cure the defect of a party not being able to sue itself. Here, Plaintiffs' claims were twice dismissed under 12(b)(6) motions, not as the result of a procedural bar or jurisdictional defect. Courts in this circuit have made clear that "dismissal under Rule 12(b)(6) is a dismissal on the merits of the action." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996); *see also* Fed. R. Civ. P. 41(b) (dismissal other than for lack of jurisdiction, improper venue, or failure to a join a party is "adjudication on the merits"). The defect in the proposed Depositary Agreement derives from the structure of the contractual scheme to which Plaintiffs agreed, and because BoA cannot as a matter of law sue itself. *See* March 23 Opinion at 410 ("Deliberate choices by 'sophisticated, counseled parties dealing at arm's length' in a 'multimillion

11

dollar transaction' must be given effect." (quoting *Chimart Assocs. V. Paul*, 66 N.Y.2d 570, 574-75 (19986))).


In *West Penn Admin., Inc. v. Pittsburgh Nat'l Bank*, 433 A.2d 896 (Pa. Super. 1981), the Pennsylvania appellate court rejected plaintiff assignee's attempt to sue a bank because the assignment had come from that same bank: "It is axiomatic that a party may not sue himself . . . [and] an assignment does not confer upon the assignee any greater right, power, or interest than that possessed by the assignor." *Id.* at 901 (internal citations omitted). The same reasoning applies here: At the time of the assignment, BoA did not have the right to sue itself under the Depositary Agreement, and an assignment cannot confer any greater rights than at the time of the assignment the assignor possessed. *See* June 6 Opinion at *6-7; *see also Squire v. Greene*, 52 N.Y.S. 1013, 1017-18 (2d Dep't 1989); *Caribbean Steamship Co. v. Sonmez Denizcilik Ve Ticaret, A.S.*, 598 F.2d 1264, 1266 (2d Cir. 1979) ("as assignee of a claim takes it with whatever limitations it had in the hands of the assignor"); *New York & Presbyterian Hosp. v. Country-Wide Ins. Co.*, 17 N.Y.3d 586, 593 (2011) ("you cannot assign your right to benefits . . . if you had no right to those benefits in the first place.").

12

The Assignment Agreement, contrary to Plaintiffs'
assertions, supports this reasoning.  The Agreement was executed
"without prejudice to BoA's position that various defects in the
Claims cannot be cured by assignment." (*See* Assignment
Agreement ¶ 2.)  The Assignment Agreement further provides that
"BoA has not waived, does not waive, and indeed expressly
reserves, any defenses or rights with respect to the assertion
of the Claims on procedural, substantive or equitable grounds,
including, without limitation, . . . any argument that the
claims are improper or may not be pursed for any reason except
the validity of the assignment." (*Id.* ¶ 2; *see also id.* ¶
5(h).)  The Agreement thus assigned available rights, but did
not concede or guarantee that any such rights existed.[2]

---

[2] Plaintiffs maintain that the assignment should be respected because BoA
"voluntarily assigned its claims" and received "valuable consideration" for
the assignment. (Pl. Mot. at 10-11.)  Whether BoA made the assignment
voluntarily and what consideration BoA received have no bearing on whether
the underlying claim under the Depositary Agreement is viable.  Similarly,
Plaintiffs' cited precedent of *U.S. Trust Co. of N.Y. v. First Nat'l City
Bank*, 394 N.Y.S.2d 653 (1st Dep't 1977), in which a successor trustee brought
an action for mismanagement against its predecessor, is irrelevant to the
instant allegations.  Plaintiffs are not successor trustees; BoA remains the
trustee. (*See* Assignment Agreement ¶¶3, 5(a).)  Further, a successor does
not obtain claims from the former trustee by assignment.  As such *U.S. Trust
Co.* is inapplicable.

13

Plaintiffs contend that they were somehow misled into believing that BoA would sue itself, citing in support a March 2009 side letter between BoA and BNP (Holcomb Aff. Ex. F) and a June 2008 opinion letter by Alston & Bird LLP, then counsel to BoA. (*Id.* Ex. E.)  However, the March 2009 letter, which the March 23 Opinion has held to be unenforceable, says only that BoA's duties as Depositary "play an informative role in mitigating" risks faced by BNP.  The June 2008 letter, in which Alston & Bird opines in boilerplate fashion that the Facility Documents create "legal, valid and binding obligations" that are "enforceable against [BoA]," does not create additional rights or obligations, but is enforceable only "in accordance with the terms" of BoA's obligations.  BoA's obligations do not include suing itself under the Depositary Agreement.  In any event, Plaintiffs are sophisticated financial institutions that struck a bargain that did not give them rights to assert claims under the Depositary Agreement. *See* June 6 Opinion at *10 (giving effect to "deliberate choices" by "sophisticated, counseled parties").   Neither letter entitles Plaintiffs, as assignees of BoA, to bring a claim that BoA could not itself bring, that Plaintiffs cannot bring in their own right, and for which Plaintiffs did not contract.

14

Because there is no applicable exception, and because Plaintiffs' claims have previously been dismissed on the merits, BoA's assignment of its rights as Indenture Trustee cannot confer upon Plaintiffs the ability to bring claims which BoA itself could not have brought.  Any supplement or amendment relating to these claims would therefore be futile.

## II.  Amending After Undue Delay Would Cause Undue Prejudice

"[L]eave to amend should only [be] given when factors such as undue delay or undue prejudice to the opposing party are absent." *SRS Commc'ns Inc. v. Herrick Co., Inc.*, 360 F.3d 329, 345 (2d Cir. 2004) (internal citations omitted); *see also Burch*, 551 F.3d at 126 ("[M]otions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party.") (international citations omitted).  "[T]he judicial and party resources that have been expended, and any tactical behavior evidenced in the plaintiff's request for leave to amend," should also be considered.  *Id.*

15

The Second Circuit has affirmed dismissal of a complaint "without leave to replead when a party has been given ample prior opportunity to allege a claim." *De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 72 (2d Cir. 1996) (citing decisions); *Mooney v. Vitolo*, 435 F.2d 838, 839 (2d Cir. 1970) ("Plaintiffs here were twice given an opportunity to replead. Therefore, it was within the sound discretion of the District Court to deny leave to replead on the third attempt."); *State Trading Corp. of India v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990) ("[A] busy district court need not allow itself to be imposed upon by the presentation of theories seriatim.") (internal citations omitted). This is Plaintiffs' third attempt to bring the same claim. (*See* Pl. Mo. At 7 ("Plaintiffs have previously pleaded claims arising from BoA's breaches of the Depositary Agreement in their original Complaints and again in the FACs and SACs.").) Plaintiffs could have sought removal of BoA as Indenture Trustee, or negotiated for BoA to assign its rights as Indenture Trustee, at any point. *See Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990) ("The burden is on the party who wishes to amend to provide a satisfactory explanation for the delay."). Instead, Plaintiff seek to supplement and amend their SACs over three and a half years since commencing the initial action, and request to

16

file a fifth complaint in under four years. *See Zahra v. Town of Southhold*, 48 F.3d 674, 686 (2d Cir. 1995) (affirming denial of leave to amend after two and a half years); *In re GPC Biotech AG Sec. Litig.*, No. 07 Civ. 6728 (DC), 2009 WL 5125130, at *5 (S.D.N.Y. Dec. 29, 2009) (denying leave to amend after more than two years, citing "inordinate length of delay" and "expenditure of time and resources"); *Bymoen v. Herzog, Heine, Geduld, Inc.*, No. 88 Civ. 1796 (KMW), 1991 WL 95387, at *1 (S.D.N.Y. May 28, 1991) ("[W]here a considerable period of time has passed between the filing of the complaint and the motion to amend, the burden is upon the movant to show some valid reason for the movant's neglect and delay.").

In addition, the "longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (citation omitted). Here, the prejudice stems from the fact that this case has been ongoing for over three years and has already twice required briefing for motions to dismiss. *See Grand River Enters. Six Nations, Ltd. v. Pryor*, No. 02 Civ. 5068 (JFK), 2004 WL 1594869, at *4 (S.D.N.Y. July 15, 2004) (the "prejudice would stem from the fact that this action is two years old and was the subject of motions to

17

dismiss for more than six months to brief and submit"); *In re "Agent Orange" Prod. Liab. Litig.*, 220 F.R.D. 22, 25-26 (E.D.N.Y. 2004) (denying leave to amend based on "burden on the judicial system" "even if the amendment would cause no hardship at all to the opposing party"). Amendment at this stage would also interfere with ongoing expert discovery and trial preparation.

**Conclusion**

Based on these conclusions, as well as the futility of Plaintiffs' proposed allegations, Plaintiffs' request to supplement and amend is denied.

It is so ordered.

New York, NY

December 9 , 2013

ROBERT W. SWEET

U.S.D.J.

18