```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

BNP PARIBAS MORTGAGE
CORPORATION, et al.,

            Plaintiffs,

       v.                            09 Civ. 9783 (RWS)

BANK OF AMERICA N.A., ET AL.,

            Defendants.
------------------------------x
                                     New York, N.Y.
                                     December 3, 2014
                                     12:10 p.m.

Before:

              HON. ROBERT W. SWEET,

                                     District Judge

                  APPEARANCES

THOMAS, ALEXANDER & FORRESTER, LLP
     Attorneys for Plaintiffs
BY:  STEPHEN SORENSEN

WILLIAMS & CONNOLLY, LLP
     Attorneys for Plaintiffs
BY:  DANIEL M. DOCKERY

BOIES, SCHILLER & FLEXNER, LLP
     Attorneys for Plaintiffs
BY:  ROBIN A. HENRY

MUNGER, TOLLES & OLSON, LLP
     Attorneys for Defendants
BY:  KRISTIN LINSLEY MYLES
```

EC35bnpA

1             (Case called)
2             THE COURT:  You are here on Paribas?
3             MS. MYLES:  Yes, your Honor.
4             THE COURT:  Okay.  Let me hear you.
5             MS. MYLES:  Shall I go to the podium, your Honor?
6             THE COURT:  Whatever.
7             MS. MYLES:  Thank you, your Honor.  Kristin Myles for
8    defendant Bank of America.
9             Your Honor, in this action I will give a little bit of
10   background to the issue that is presently before the Court.
11   Plaintiffs are offering what we view as an ahistorical view of
12   the duties of Bank of America, formerly known as LaSalle under
13   the security agreement, in which they seek to impose on Bank of
14   America a host of the duties in the general nature of
15   monitoring Ocala's disposition of cash and --
16            THE COURT:  Excuse me.  I have some recollection of
17   our past encounters in this and some sense of what it is all
18   about.  Fortunately, I have managed to forget a good part of it
19   but I am sure that that will, past recollection will be, etc.,
20   etc.
21            What is it you want me to do?  Do you want me to
22   extend the fact discovery period to take Ughetta's deposition?
23   That's all I can do, isn't it?  What else can I do?
24            MS. MYLES:  Well, your Honor, what we have asked
25   plaintiffs' counsel, and they've been very unclear on what

1  their answer is, to simply allow Mr. Ughetta to put in a
2  declaration.
3             THE COURT:  Look.  If he wants to put in a
4  declaration, that's fine.  That's grand.  I would love to have
5  it.  I'm sure it would be very helpful.  If he doesn't want to,
6  for whatever reason, I don't know that I can say to -- I mean I
7  can say to you to be reported to him, I'm sure any contribution
8  he would make would be very helpful, but I don't know that I
9  can do anything more than that.  Do you?  I mean, I can't say
10 to the plaintiffs would you please give up this cockamamy idea
11 you have and forget about it.  I mean, I can't.
12            So, I would love to help you but the only thing I
13 think I can do would be to, if you want to serve a
14 deposition -- I mean, I assume he is not going to give you a
15 declaration.
16            MS. MYLES:  Well, your Honor, he has said he would.
17 The only thing that is standing in the way of that --
18            THE COURT:  But whatever.  You haven't got it.
19            MS. MYLES:  Right.  The only thing that is standing in
20 the way is that the plaintiffs have said they won't consent to
21 it.
22            THE COURT:  Well, I can't say to the plaintiffs you
23 have to consent.  Can I?  I mean I could say, yes, it would be
24 nice if you would get this problem off my back, I would
25 certainly say that, but how can I force them?  What can I do?

EC35bnpA

1          MS. MYLES:  I think they could consent.  They could
2    simply withdraw any objection.
3          THE COURT:  Sure they could but they're not going to.
4          MS. MYLES:  Yes; they told this Court that they
5    wouldn't have any problem with his providing a declaration but
6    then they told the Court that they would have a problem with
7    it.
8          THE COURT:  Look.  We know that they're telling him
9    don't do it.
10         MS. MYLES:  So, we would, if plaintiffs will not agree
11   to remove any obstacle to his providing a declaration --
12         THE COURT:  Let's just get that clear.
13         You have an objection to the declaration, right?
14         MR. SORENSEN:  That's correct, your Honor; we will
15   not --
16         THE COURT:  Okay.  Okay.  That's what I thought.
17         MS. MYLES:  So, they're going to stand on their
18   objection in which can case we would ask that he be permitted
19   to give a limited deposition.  Cadwalader has said they don't
20   have any problem with that and they aren't going to --
21         THE COURT:  Look.  I mean it is not a big deal if it
22   is and you say a relatively short deposition and so on, it
23   won't be repetitive and so on but it raises the potential, as I
24   am sure you know better than anybody, it raises the potential
25   of screwing up all the expert reports and everything else.  And

1    I don't see any way to cure that unless you can think of
2    something.
3             MS. MYLES:  Well, I want to make one point and that
4    may alleviate your Honor's concern.  The testimony that we
5    anticipate Mr. Ughetta giving, based upon our interviews with
6    him, is largely duplicative of the testimony that already has
7    been given by declaration by Mr. Kim, and Mr. Kim was also
8    deposed and that testimony and that -- the substance of what he
9    said was incorporated into the expert reports and was the
10   subject of questioning of the expert witnesses.  The main issue
11   with Kim is that he was an associate working under Ughetta at
12   the time of the transaction.  So, although he represented --
13            THE COURT:  Obviously it is much better testimony than
14   having the partner.  The partner doesn't know anything about
15   it, clearly.
16            MS. MYLES:  He certainly had a closer involvement in
17   the drafting of the documents.
18            THE COURT:  Okay.
19            MS. MYLES:  And he has already given --
20            THE COURT:  That's where we are.
21            How do you feel about having the deposition of
22   Mr. Ughetta?
23            MR. SORENSEN:  Your Honor, we object.  And I think we
24   need to put this in perspective and I think a little history is
25   helpful here because this is a witness who was identified --

1            THE COURT:  No, no.  I understand he was identified.

2            MR. SORENSEN:  Both Ms. Myles -- I'm sorry, your

3    Honor.

4            THE COURT:  Yes.

5            MR. SORENSEN:  Both Ms. Myles and I took his

6    deposition, which she didn't mention in her letter, but she had

7    seven hours with him, she only used two.  Everyone knew that he

8    was going to be a witness in this case.  They had an

9    opportunity, she now wants essentially a do-over, a Mulligan

10   here because she didn't get whatever testimony she believed she

11   needed.  We think it is unfair.

12           We had this schedule in place, they had an opportunity

13   at his deposition to ask him any questions they wanted about

14   his view of the agreements.  They decided not to.  They've now

15   changed their mind and the reason why our clients object to

16   this is because they believe they've been sandbagged because

17   back in 2013 --

18           THE COURT:  They believe what?

19           MR. SORENSEN:  They've been sandbagged here.  At the

20   eleventh hour, Bank of America has gone to Cadwalader and has

21   presented this issue now about a declaration whereas back in

22   2013 when we first started having discussions with Cadwalader I

23   had discussions with Cadwalader and we asked whether Cadwalader

24   would make Mr. Ughetta available to meet with us and they told

25   us at that point, look, it is a difficult situation for us.

EC35bnpA

1   All three banks are clients of ours.

2           THE COURT:  Yes.

3           MR. SORENSEN:  If he is compelled to testify, that's

4   how we want to do it.  And so, we proceeded on that basis.  And

5   then it wasn't until October of this year, just prior to

6   summary judgment briefing, that we heard they wanted an

7   interview and a couple days before summary judgment briefs they

8   said we want to reopen his deposition.

9           We think it is unfair at this point, that we had this

10  schedule in place for a long time.  There is nothing new about

11  this witness.

12          THE COURT:  Well, obviously there is something there

13  that they want that they don't have.

14          MR. SORENSEN:  Correct.

15          THE COURT:  I mean, what that is I don't know and I

16  certainly don't want to get into it at this juncture, I

17  suppose.  I suppose.

18          Can you give me some sort of idea?

19          MS. MYLES:  Yes.  The plaintiffs basic theory is the

20  security agreement imposed a host of the duty, as your Honor

21  recalls.

22          THE COURT:  Yes.

23          MS. MYLES:  And it was that theory that was the

24  centerpiece of the opposition to the motion to dismiss.

25          THE COURT:  Yes.

1            MS. MYLES:  And your Honor, construing the facts in

2    favor of the plaintiffs, found that the agreement was

3    susceptible to the reading they were giving it.  So, we have

4    now developed parol evidence to show that both parties to the

5    transaction, that is to say the TBW Ocala and the LaSalle side

6    both viewed the agreement the same and each of the duties that

7    plaintiff say were implicit in that agreement or explicit were

8    not the intention of the parties.

9            So, the law is pretty clear that when both sides to

10   an --

11           THE COURT:  Gee.  You know?  That reminds me of way

12   back when, when we had our first motion when each side said

13   these documents are absolutely clear.  Oh well.

14           Okay, but what do you need now that you don't have?

15           MS. MYLES:  So, we wanted Mr. Ughetta because the

16   plaintiffs, when they took Mr. Kim's deposition, picked away at

17   his status as an associate.  Mr. Kim was no longer at

18   Cadwalader in 2005, he moved to Bank of America, so they

19   undoubtedly will claim that Mr. Kim is part of Bank of America

20   and can't testify for what was the other side to the

21   transaction at the time, it was the TBW Ocala side, he was

22   working for Cadwalader.  He testified and has testified to his

23   memory of that negotiation and his understanding of the terms.

24           As I said, Mr. Ughetta's -- we had an interview with

25   him, as did the plaintiffs.  We had separate interviews.  His

1  view was largely duplicative of that of Mr. Kim.  We did not
2  anticipate the plaintiffs would stand in the way of his
3  providing a declaration.  It is fairly common and relatively
4  standard in a case such as this if a third-party provides a
5  deposition testimony for them later to provide a declaration at
6  the summary judgment stage on topics --
7       THE COURT:  The declaration is going to differ from
8  the deposition.
9       MS. MYLES:  It won't differ, it just adds additional
10 details.
11      THE COURT:  Why isn't the deposition enough?
12      MS. MYLES:  Because not all the topics that are
13 covered in the declaration would have been covered in the
14 deposition.
15      THE COURT:  Like?  It is a Mulligan.  I mean, it is a
16 Mulligan.  Maybe there is good reason for it and so on.  I
17 mean, in other words there are some things that you would like
18 to have covered now that you didn't cover two years ago or
19 whenever it was, right?
20      MS. MYLES:  Well, it is just that we have now had the
21 opportunity which we didn't have before the deposition to
22 interview him.
23      THE COURT:  Okay.  May the good Lord save me from this
24 decision and I hope -- what was Pandora's box made of now?
25 Does anybody know?  No, we don't know.

EC35bnpA

1           Well now, I hope we can keep it closed but we may not
2    but I will permit limited deposition.  How limited?  How are we
3    going to do that?
4           MS. MYLES:  Your Honor, may I be heard for a moment?
5           THE COURT:  Sure.
6           MS. MYLES:  We can limit it to the topics of the
7    security agreement.
8           THE COURT:  Well, okay, but that's not going to be
9    much, but.
10          MS. MYLES:  What plaintiffs mostly asked him about
11   before was Mr. Ughetta's interpretation of the depository
12   agreement which is no longer in the case.
13          MR. SORENSEN:  Your Honor, may I be heard?  Because
14   you did mention Pandora and because I think there is a box
15   opening up here, I think everything is fair game and, as you
16   noted, there are voluminous expert reports at issue here.  It
17   is going to open up a can of worms and we would ask that we
18   have the right to reopen the depositions of Kim, who Ms. Myles
19   referenced.
20          THE COURT:  Well, I recognize that we will have to --
21   you know, I suppose if it really starts spiraling out of
22   control then I can reverse myself and quash it.  I hope it
23   doesn't but, as the fellow says, this is sort of a search for
24   the truth and I guess it might actually help in the long run
25   now.  If it turns out to be a disaster -- and I recognize that

EC35bnpA

1    it may well be -- I will have to cope with that.

2              MR. SORENSEN:  Your Honor, could I also note that we
3    would also expect to have the right to take his deposition as
4    well?

5              THE COURT:  Oh sure.  I mean, you will be there?

6              MR. SORENSEN:  Yes.

7              I just wanted to be clear that Ms. Myles is suggesting
8    that there is going to be some limited set, some limited area
9    that Bank of America was going to ask questions about, but if
10   he is sitting for deposition we would expect to be able to ask
11   questions as well covering the same subject matter.

12             THE COURT:  Well she.

13             MS. MYLES:  Of course.  We wouldn't object to that.

14             THE COURT:  She might get hoisted on her own petard,
15   whoever knows what that means but, sure.  If he is deposed, he
16   is deposed.  All I will say is it should not be duplicative of
17   the initial deposition.

18             MS. MYLES:  Yes.  Of course, your Honor.

19             THE COURT:  Okay?  Good luck.

20             MS. MYLES:  Thank you, your Honor.

21             MR. SORENSEN:  Thank you.

22             THE COURT:  All right.  Thanks a lot.
                                    o0o